ROSE FURLONG, Appellant, v. THOMAS CARRAHER.

**Undue Influence: EVIDENCE** Evidence that the son of a testatrix, a woman of advanced years and rather weak of mind, took charge of her farm and the personal property kept thereon, and largely directed the disposition of the same while his mother was living, is not sufficient to show undue influence over the mother in the execution of her will, it not appearing that the son had anything to do with the making of that instrument.

**EVIDENCE:** *Opinions of subscribing witness.* In a contest over a will on the ground of mental incapacity to make a will, it is not competent to ask a subscribing witness what was the testator's "capacity to make a will," as such question calls for a decision of the whole case.

**SAME.** A question calling for the opinion of a subscribing witness to a will, as to the condition of the testator's mind, based upon the testimony given by him before the jury, is not competent where the witness has not testified to any facts tending to prove unsoundness of mind, and this, though a subscribing witness may, if asked, give his belief as to testator's mind, without stating the grounds of the belief.

**USE OF TRANSCRIPT:** *Exclusions waived.* Where, by agreement of parties, the testimony of a witness taken on a former trial is read in evidence, all rulings excluding evidence when offered on the first trial are waived.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

SATURDAY, MAY 20, 1899.

This is a contest over the probate of the will of Bridget Carraher, deceased. The plaintiff and contestant alleges that the testatrix was not of sound and disposing mind at the time the will was executed, and that the same was procured through the undue influene of defendant, who is a son of the deceased. There was a trial to a jury, resulting in a directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*James Nugent* and *W. A. Connolly* for appellant.

*F. W. Dodson, A. A. McLaughlin,* and *W. A. Spurrier* for appellee.

DEEMER, J.—Bridget Carraher was seventy-five years old at the time of her death, which occurred on or about February 9, 1894. Her husband died eight or nine years ago, and the management of the property devolved upon Thomas Carraher, a son. On October 21, 1893, Mrs. Carraher made a will, by which she devised a house and lot to one daughter; two hundred dollars and her bedding and clothing to another; two hundred dollars to plaintiff, who is yet another; and the residue and remainder of her property to defendant, Thomas Carraher, who was also charged with the payment of all just debts and funeral expenses. It is this will which plaintiff contests. A careful consideration of the evidence leads us to the conclusion that, while the testatrix was feeble in body, and somewhat weak of mind, yet that she had a sound and disposing mind and memeory. Any other conclusion would be without sufficient support in the evidence, and hence the trial court did not err in holding that

the deceased had sufficient mental capacity to enable her to execute the will. The evidence as to undue influence is not sufficient to justify a verdict in favor of contestant. The most that can be said for it is that defendant, who had charge of the farm and the personal property kept thereon, largely directed the disposition of the property while his mother was alive, and dictated the course that should be pursued with reference thereto. This was largely because he had charge of the farm, and had conducted the business from the time he was old enough to look after such matters. There is no evidence whatever tending to show that he had anything to do with the execution of the will, or that he had any knowledge thereof until some time after it was made. The duty of the trial court in such cases is well understood, and we are of opinion that there was no error in directing the verdict.

II. One of the subscribing witnesses to the will was asked this question: "Q. Now, from what you have testified here before this jury, what do you say as to the condition of her mind at the time she executed this will,—whether she was in such mind as to understand the effects of the will upon her property and her children? What would be your judgment on that?" It was objected to as incompetent, irrelevant, and immaterial, and for the further reason that the witness has not testified to sufficient facts to entitle him to give an opinion as to her mental capacity. The court sustained the objection. Again, this same witness was asked: "Q. Now, I renew my question, Mr. Blanchard: From what you have testified to of her actions and conduct on the occasions when she was getting these wills drawn, what do you say as to her mental capacity to make a will, and to know the effects upon her children and her property?" To which defendant interposed the same objection as theretofore made to a similar question to this witness. This objection was also sustained. The last question was clearly incompetent, for the reason that the witness is called upon to decide

the whole case.  *Pelamourges v. Clark,* 9 Iowa, 1; Rogers Expert Testimony, p. 47.  The first question does not call for the condition of the testatrix's mind at the time the will was executed, based upon the fact that witness was one of the subscribing witnesses, but asks for his opinion as to the condition of her mind, based on the testimony given by him before the jury.  As he had not stated any facts tending to disclose unsoundness of mind, the court correctly sustained the objection.  Had the witness been asked the simple question as to the testatrix's condition of mind at the time the will was executed, it should have been answered, for it is a well-settled general rule that a subscribing witness may state his belief as to the testatrix's condition of mind without first showing grounds on which that belief is based.  Schouler Wills (2d ed.), section 187; *Parsons v. Parsons,* 66 Iowa, 754; Greenleaf Evidence, section 440.  The testimony of one John M. Day, another subscribing witness, given upon a former trial, was, by agreement, read in evidence on this trial.  He was asked a question somewhat similar to that propounded to the other witness.  The court trying the case when the evidence was taken sustained the objection.  What has already been said answers the complaint made of the ruling on this evidence. There is this additional thought, however which is conclusive, and that is that the evidence of Day, as taken upon the former trial, was read by agreement of the parties on this trial.  Under this agreement, all rulings excluding evidence were, of necessity, waived.  There was no way in which the rulings made at the prior trial could be corrected, for the witness was not present to give evidence.  We have already said that the trial court was right in directing the verdict, and need only add that the evidence adduced, viewed in its strongest light, does no more than create a suspicion of undue influence.  It is not sufficient to justify a verdict for the contestant.  The judgment is therefore AFFIRMED.