122 246
134 35
134 37

IN RE ESTATE OF J. W. TOWNSEND, Deceased, EDITH C. TOWNSEND, a Minor by Her Next Friend, Contestant and Appellee, v. CHARITY TOWNSEND *et al.*, Proponents and Appellants.

Wills: CONTINUANCE. In a proceeding to contest the probate of a
1 will, it was error to refuse a continuance based on the sickness of the testator's widow, where it appeared that she was a material witness, and the error was not cured by her appearance after several day's trial of the cause. It was also error to refuse a showing that she was then sick.

Evidence: PROOF OF INCONSISTENT STATEMENT. In contesting the
2 probate of a will it appeared that the minor contestant, by her mother, had filed objections to its probate in a former proceeding which had been dismissed. *Held*, that on cross-examination of the mother as a witness in the second contest, the objections previously filed by her were admissible in proof of her inconsistent statements.

Evidence: IMPEACHMENT. The affidavit of a party's attorney is
3 admissible to impeach the party, but he may explain the statements contained in the affidavit.

Evidence: KNOWLEDGE OF WILL. Either party to a will contest
4 should be permitted to state whether he knew anything of the making of the will or its contents, prior to the death of the testator, where the question does not call for a personal transaction with deceased. The unfriendly relation existing between testator and the family of contestant may also be shown.

Special Interrogatories. In the contest of a will, special interrogatories calling for ultimate facts which are material to the
5 issues in the case, should upon request be submitted.

Affidavit by Attorney: INSTRUCTIONS. An instruction that the recitals in an affidavit made by an attorney should be regarded
6 of the same effect as if made by the parties themselves, in view of the facts offered to be shown, is held erroneous.

Undue Influence: INSTRUCTIONS. Facts and circumstances tending
7 to show that the provisions of a will are unreasonable may be considered in connection with the question of undue influence, but an instruction which permits a jury to find undue influence from such facts alone, is erroneous.

instructions: DISCRIMINATION. In a proceeding to contest the pro-
8    bate of a will, the action of a trial court in instructing fully
upon contestant's theory of the case, referring specially to the
evidence relied upon by contestant, but presenting proponent's
theory only in a general way, is reviewed and held to consti-
tute prejudicial error.

Undue Influence: EVIDENCE. For a contestant to defeat the pro-
9    bate of a will on the ground of undue influence, it must be
shown that undue influence was in fact exerted and that it
controlled the will of the testator. Statements of the testator
tending to disclose his condition of mind are admissible, but
as substantive proof of undue influence, are inadmissible.

Undue Influence: PRESUMPTION. There is no presumption that a
10    will, made in harmony with the wishes of the wife of testa-
tor, is the result of undue influence.

*Appeal from Davis District Court.*—HON. F. W. EICHEL-
BERGER, Judge.

TUESDAY, JANUARY 19, 1904.

THIS is a contest over the probate of the last will and
testament of J. W. Townsend, deceased. The contestant,
who is a granddaughter of the deceased, admits the ex-
ecution of the will, and that the testator was of sound
mind, but claims that he was unduly influenced to make
it by the beneficiaries therein named, who are the widow
and children of the deceased. The alleged undue in-
fluence is denied by the proponents, who are the bene-
ficiaries under the will; and on the issues thus joined the
case was tried to a jury, resulting in a verdict in favor of
the contestant. Proponents appeal.—*Reversed.*

*Payne & Sowers* and *H. C. Taylor* for appellants.

*H. C. Traverse* and *J. C. Mabry* for appellee.

DEEMER, C. J.—The will in question was executed by
J. W. Townsend on the 9th day of June, 1896. It was
drawn by attorneys who were employed for that purpose

after consultation with the testator, and is a clear expression of his intent at that time. It is properly attested, and by its terms gives the widow, Charity Townsend, all the exempt personal property, and a certain tract of land in Davis county, in lieu of her distributive share, and devises the remainder to his sixteen living children (naming them), share and share alike; providing that, if any of them should die leaving issue, his or her share should descend to such issue, and that, if any should die without issue, his share should go to the surviving children. The will was left with the attorneys who drew it, and held by them until after the death of Townsend, which occurred in the year 1901. Contestant, Edith C. Townsend, is a grandchild of the deceased; being the daughter of a son, Lewis Townsend, who died in the year 1895. There is no doubt that the will reads just as the testator intended it should, but contestant claims that it was the result of undue influence practiced by the beneficiaries or others upon the testator, and that it is not the result of his free agency. The case was first called for trial on the issues joined before the Honorable Robert Sloan. Contestant filed a motion for a continuance of the case, which was sustained. It then went over to the next term of court, whereat Judge Eichelberger was the presiding judge. Defendants filed a motion for change of venue, based upon the alleged prejudice of Judge Eichelberger. This was overruled. Thereupon they filed a motion for a continuance based upon the alleged sickness of the widow, Charity Townsend. This motion was also overruled. Complaint is made of these rulings.

As to the motion for change of venue, we should have been better satisfied with a ruling sustaining the motion. Perhaps the record does not justify a reversal on this ground alone, for the reason that one of the three affiants who testified as to the prejudice of the judge withdrew his affidavit before the motion was

1. CONTINU-
     ANCE.

submitted to the court; but the showing was such as to cause one to hesitate about trying the case. The ruling on the motion for a continuance because of the sickness of Charity Townsend was, we think, erroneous, and sufficient to reverse the case, unless it be for some matter subsequently appearing. There is no doubt that the widow was ill at the time the motion was submitted; that her presence was needed at the trial, not only because she was a party, but for the reason that she was a very material witness; and that defendants were in no manner in fault. The motion was overruled on March 21, 1902, and the case came on for trial to a jury on the 26th. After the case had been on for hearing for some days, and when proponents came to introduce their evidence, Charity Townsend appeared, against the advice of her physician, and was examined as a witness in the case. Proponents offered to show that she was then sick, but the court would not allow them to do so. This ruling was also erroneous. Does this apparance of Mrs. Townsend negative the presumed prejudice resulting from the error in overruling the motion for a continuance? We think not. Her counsel were entitled to her presence, counsel and advice during the entire trial. The evidence discloses that she knew more about the real issues than any one else, and, while she may have been incompetent as a witness to testify to many of these matters, there was the more need for her advice and counsel during the trial. This in itself would dispose of the case, but there are some other matters which should be considered, in view of the record and the claims made by the respective parties.

II. Lewis Townsend, the father of the contestant, died in the year 1895. He was, no doubt, a favorite son; and prior to his death the deceased thought much of his wife, Anna Townsend, and of his grandchild, Edith. After the death of this son the testator and Anna Townsend had unpleasant con-

2 EVIDENCE: proof of inconsistent statement.

troversies, resulting in litigation between them, and their relations became unfriendly. Deceased either lost, or thought he lost, something like $3,000 because of the conduct of his son's widow. She was never in his home after that; nor was her child, Edith, there more than once thereafter. Shortly after the death of J. W. Townsend, Edith Townsend, by her mother and next friend, filed objections to the probate of his will, in which it was alleged, among other things, that testator was of unsound mind; that he became unduly incensed at Anna Townsend by reason of the litigation to which we have referred, and insanely transferred that resentment to her child, Edith, who was then three years old; and that he became a monomaniac on the subject of ignoring Edith C. Townsend's claims. This was signed by Edith C. Townsend, by her mother as next friend, Anna L. Townsend, and H. C. Traverse, attorney. The claim now made is that deceased was greatly in love with his grandchild and her mother, that he was of sound mind, and that he was unduly influenced by the beneficiaries under the will to forego his affections for his grandchild and to disinherit her. While on the witness stand, Anna L. Townsend testified as to the good feeling which existed between her daughter and herself and the testator, and gave evidence which, if believed, would show a disposition on the part of deceased to remember his grandchild by will. She admitted that she had employed an attorney to file objections to the probate of the will, and the objections to which we have referred were the ones so prepared. But she said that she never saw the paper, and did not instruct her attorney as to what to put in it. This paper was introduced as a part of defendants' cross-examination of the witness, but it was not allowed to go to the jury, because the witness had never seen it. It was filed in the probate court and in this very case, and was prepared at the instance of Anna Townsend. True, that particular contest was dismissed without prej-

udice, and a new one was commenced by the contestant, through Frank Layman, her uncle, as next friend; but these facts alone are not sufficient grounds for rejecting the paper filed for and on behalf of the contestant. It may be that the statements therein made were not binding on the contestant, but *prima facie* they were statements made by her mother, Anna Townsend, inconsistent with her testimony while on the witness stand; and the paper should have gone to the jury, with the witness' explanation thereof, to be given such force and effect as the jury should have seen fit to accord it.

In this same connection we discover that contestant offered in evidence an affidavit filed by one of proponents' counsel as the basis for the motion for a continuance, in 3. EVIDENCE: which it was stated, among other things, that impeachment. deceased relied very much on his wife in all business transactions. An objection to this offer was overruled, and properly so. But proponents offered to show on rebuttal that none of the proponents knew what was in the affidavit; that it was made during their absence, and was therefore not conclusive upon them. In its instructions the court also said that proponents, by filing the affidavit, thereby asserted that the statements therein were true. It is manifest that the court was not consistent in its rulings on these matters. The same rule should be applied, no matter which party offers the evidence. There is a double error here: First, in not admitting the original contest; and, second, in denying to defendants the right to explain the statements made in the affidavit filed by their attorney. This affidavit was offered for the purpose of impeachment. It could have been used for no other purpose, and, as it was not made by proponents, but by their attorneys, they had the right to explain the matter, and to have their explanation go to the jury.

Defendants and proponent were each asked on the witness stand as to whether they knew anything of the

making of the will or of its contents, before the testator's

**4. EVIDENCE: knowledge of will.** death, but were not premitted to answer. The rulings were manifestly erroneous. The

The question did not call for personal transactions or communications with deceased, but for knowledge on their part, and should have been answered. That such information or knowledge, or the want of it, is material, see *Furlong v. Carraher*, 108 Iowa, 494. The exact point here presented seems to be ruled by *McElhenney v. Hendricks*, 82 Iowa, 659. The widow was asked on the witness stand this question: "Did you know that your husband had this will before he died, leaving out any knowledge or information that you may have received from your husband?" Objection to the question was sustained. On contestant's own theory, this should have been overruled, as the question carefully excludes any information the witness may have received from her husband. But the theory itself suggests the strongest argument for the admission of the evidence offered to show want of knowledge of the execution of the will on the part of each and all of the proponents. If the deceased gave them information so that we may say there was a transaction or communication between them and the deceased, then they knew of the will, and this would help the contestant. If there was no transaction or communication, then, of course, there could be no objection to a question calling for that fact.

Proponets offered to show by the widow that the testator and his family and Anna Townsend were unfriendly after the litigation between Anna Townsend and the testator, but this offer was denied. In this there was manifest error. Contestant offered evidence to show that there were no unfriendly relations, and the testimony offered by proponents did not offend against Code, section 4604, as the idea of personal communications or transactions was negatived. Some other matters are argued in

this connection, but, as they are not likely to arise on a retrial, we do not consider them.

III. Defendants and proponents submitted ten special interrogatories to be propounded to the jury. The trial court refused to submit any of them, and of this com-

5. SPECIAL in-terrogatories: plaint is made. We think the first and sixth and eighth, which read as follows, should have been submitted: "(1) State whether any undue influence was exercised upon J. W. Townsend, which overcame his free agency or dominated his will so that he was unable to resist said influence?" "(6) Did any of the proponents know of the intention of J. W. Townsend to make a will before the same was made?" "(8) Did any of the proponents know prior to the death of J. W. Townsend that he had made a will?" They each called for ultimate facts material to the issue in the case.

IV. The instructions given by the court are complained of, and it is also argued that there was error in denying certain requests for instructions. We have al-

6. AFFIDAVIT by attorney; instructions. ready referred to one in connection with the introduction in evidence of an affidavit made by one of proponents' attorneys. That instruction asserts that the statements in said affidavit so made by the attorney should be regarded as of the same force and effect as if made by proponents themselves, and considered as bearing on the questions as to whether J. W. Townsend was self-reliant or susceptible to undue influence. As applied to the facts offered to be shown, this instruction was erroneous.

The eighth instruction reads as follows: "(8) If you find that one Lewis Townsend was the son of said J. W. Townsend, and that he died intestate in Davis county,

7. UNDUE in-fluence: in-strucions. Iowa, before the death of J. W. Townsend; and if you find that contestant is and was the only child of Lewis Townsend; and if you further find that said Lewis Townsend was a

favorite son of said J. W. Townsend up to the death of said Lewis; and if you also find that contestant had the affection and love of J. W. Townsend up to the time of the execution of the alleged will; and if you further find that contestant is, and at the execution of said writing was, a minor, poor and needy, and unable to earn her own living; and if you also find that her mother, the widow of said Lewis Townsend, if such is the fact, is, and was at the execution of the alleged will, also poor; and if you find that the living sons of J. W. Townsend, the beneficiaries under his alleged will, were less needy than contestant, and better able to earn their respective livings than contestant; and if you find that J. W. Townsend, at the time he made the alleged will, and at the time of his death, was a man of considerable property; and if, from all these circumstances, if they have been shown; or if from the facts and circumstances in evidence you find that the alleged will is unreasonable, under the circumstances, in making no provisions therein for contestant—then the unreasonableness of said alleged will is a circumstance which it is proper for you to consider and weigh, in connection with all the other facts and circumstances in evidence, when you come to pass on the question of undue influence, and it is your province to say what weight the combined circumstance shall have." We think it was erroneous, in that it permitted the jury to find from the facts therein recited that undue influence was used. Such is not the law. *Denning v. Butcher*, 91 Iowa, 425; *Smith v. James*, 72 Iowa, 515. Of course, the facts therein referred to may be considered, but they are not in themselves sufficient to show undue influence.

In this connection, proponents asked the court to give the following instruction:

"(17) There is some evidence in this case tending to show that the testator was at one time engaged in some litigation with the mother of the contestant, and bore

some ill will or dislike toward her; and you are instructed

8. INSTRUC-     that if the testator was influenced thereby
TIONS: dis-
crimination.   to make his will as he did, ard a the time
was of sound mind, if he did so by his own free choice and
agency, his will would be valid, and should be recognized
by you, even if he did it unjustly or with mistaken opin-
ion, as to the matters involved, yet that would not inval-
idate his will, but would rather tend to explain why he
made his will as he did."

This was refused, and nothing of like import
was given.   The trial court was very particular to
cover the case from contestant's standpoint in every
conceivable manner, referring specifically to the evi-
dence relied upon in support of every proposition in the
case.   Defendants' theory was presented only in the most
general way.   This, we think, was erroneous.   For in-
stance, defendants asked the following instructions,
neither of which was given:

"In order that contestant may recover in this case,
there are two facts that must be proven by her:   First,
that undue influence was in fact exerted; second, that

9. UNDUE in-   it was successful in subverting and controlling
fluences:
evidence.      the will of the testator.   Both of these facts
must be proven by the contestant by the weight of the
evidence in order to defeat the will.   Upon the latter
question, evidence of the statements of the testator, made
either before the will was made or after, and which tend
to throw light on the condition of mind, are admissible;
but, as to the first question, the evidence of such state-
ments is hearsay and incompetent and should not be con-
sidered by you.   Such declarations have been admitted only
for the purpose of proving the condition of the testator.
They afford no substantive proof of undue influence, and
cannot be admitted for such purpose; and, before contest-
ant can recover, it is necessary that she should prove that

undue influence was, in fact, and actually, exerted upon the testator, by other evidence than his own declarations."

"Evidence has been introduced tending to show that the wife of testator was accustomed to accompany him when he went away from home, and also that she participated to some extent in his business affairs, and was familiar therewith, and was connected with her husband in relation thereto. You are hereby instructed that such facts, if proven, do not raise any presumption of undue influence on her part upon her husband, or that she influenced him to execute said will; and, even though she advised him to make the will as he did, there would be no presumption therefrom that her influence was undue. If the wife, in her faithfulness and good qualities, has secured the respect and esteem of her husband, even to such an extent that her wishes satisfy him, it would not amount to undue influence, should he make a will in accordance with her request. The law will not presume that a wife would exert undue influence upon her husband, nor would it presume that a will made in harmony with her request or preference would be the result of undue influence on her part. No presumption of undue influence arises from the fact that the wife advised her husband in his business affairs, or even guided him in said matters."

*10. UNDUE influence: presumption.*

We think they should have been given, in order that the case might fairly have been presented to the jury.

V. Lastly it is contended that the verdict is without support in the evidence. In view of our conclusions, it is perhaps better that we express no opinion on this subject. It may not be out of place to suggest that the case as made by contestant on this appeal is a very weak one. What may be developed on a retrial, we do not know, and hence pass the matter with this suggestion.

For the error pointed out, the judgment must be REVERSED.