In the matter of the Probate of the Will of Stephen Wharton, Deceased. A. M. Harrah, Proponent, Appellant, v. George Wharton and Esther Wharton by her guardian, E. M. S. McLaughlin, Contestants.

**Will contest:** SUBMISSION OF ISSUES. Where mental incapacity is specifically found in a will contest any error in submitting an issue of undue influence is without prejudice.

**Same:** PREJUDICE. In a will contest the designation of an executor by the court in its instructions as sole proponent, and the guardian of the widow from whom provisions were made in the will as contestant, was without prejudice to the executor, where the will was before the jury and the circumstances fully known to them.

**Same:** MENTAL CAPACITY: INSTRUCTION. An instruction, in a will contest, which contains nothing to mislead the jury in its application to the facts, is not objectionable because reiterating the necessity that the testator possess a mind capable of exercising judgment, reason and deliberation.

**Testamentary capacity:** EVIDENCE. Evidence of a testator's mental condition subsequent to the execution of a will is competent, where it relates to a connected period from a time prior to the execution of the will when the testator received an injury to which his mental condition is attributed, and an instruction permitting the jury to consider the same is not erroneous.

**Same:** EVIDENCE OF SUBSCRIBING WITNESSES. Subscribing witnesses to a will who have stated the grounds for their belief may give an opinion as to the testator's mental capacity based thereon the same as other witnesses, but such evidence should be given weight only so far as sustained by the circumstances detailed.

**Expert evidence:** INSTRUCTIONS. Where the court directs the jury to consider the opinions of experts so far as supported by the detailed circumstances, the instruction is not open to the objection that it authorized them to give weight to opinions in response to hypothetical questions not supported by the evidence.

**Affirmative and negative evidence:** WEIGHT TO BE GIVEN. Where witnesses of equal creditability are in a better position to know the facts of which they affirmatively testify than those testi-

fying negatively, the evidence of the former should be given greater weight than that of the latter.

**Conversations with one since deceased:** COMPETENCY OF WITNESS.
Although the contestant of a will is an incompetent witness, under the statute, as to conversations with the testator, yet he may be rendered competent on re-direct examination and may then be examined as to a conversation partially inquired into on cross-examination. Under the record the witness is held competent on re-direct.

**Argument:** RIGHT TO OPEN AND CLOSE. Where the only issue submitted on a will contest relates to the mental capacity of the testator, the contestant has the burden and is entitled to the opening and closing.

**New trial:** MISCONDUCT OF COUNSEL. The financial condition of a testator and the devisee may be taken into consideration, in determining the unreasonableness of a will, as indicating a disordered mind and reliance thereon in opening the case to the jury is not such misconduct as will require a reversal, especially where the court has cautioned the jury that they are not to take into account extraneous matters not supported by the evidence.

*Appeal from Jasper District Court.*— HON. BYRON W. PRESTON, Judge.

WEDNESDAY, OCTOBER 24, 1906.

REHEARING DENIED, FRIDAY, JANUARY 18, 1907.

THIS is a proceeding for the probate of the will of Stephen Wharton, deceased, offered for probate by A. M. Harrah, devisee, who is also named as executor, to act without bond, and contested by George Wharton, his son, and Esther Wharton, his widow, who, having been adjudged insane, is represented by a guardian. The grounds of contest were want of mental capacity, and undue influence. There was a special finding of want of mental capacity by the jury, a general verdict in favor of contestants, and a judgment entered on such verdict, denying and refusing admission of the will to probate. Proponent appeals. *Affirmed.*

*O. P. Myers* and *E. C. Ogg,* for appellant.

*E. J. Salmon,* for appellee George Wharton.  *E. M. S. McLaughlin,* for appellee Esther Wharton.

McClain, C. J.— Many errors are assigned as to the action of the trial court, and it will only be possible to discuss those which seem to this court to be of controlling importance.

I. Various objections are urged to the correctness of instructions on the issue as to undue influence, and as to the refusal of instructions on that subject, particularly an in-

1. Will contest: submission of issues.

struction withdrawing that issue from the jury on the ground that there was no evidence to support the contest, but we do not find it necessary to notice these objections, for the court submitted to the jury separate special interrogatories as to the unsoundness of the mind of deceased, and as to whether, in executing the will, deceased was acting under undue influence, with the direction that, if the answer to the first interrogatory was that deceased was of unsound mind, then the interrogatory as to undue influence need not be answered, and the jury returned an affirmative answer to the first interrogatory, making no answer to the second. It is clear from this record that the general verdict of the jury was not based on the evidence as to undue influence, and it could not have been affected by the instructions on that subject. There was no prejudicial error, therefore, in submitting the issue as to undue influence nor in the giving of the instructions on that subject even if they might be found to be erroneous. *In re Will of Selleck,* 125 Iowa, 678; *In re Betts' Estate,* 113 Iowa, 111.

II. The designation by the court in its instructions of A. M. Harrah as the sole proponent, although the will

2. Same: prejudice.

proposed for probate contained provisions for the benefit of Esther Wharton, widow, and the naming of her as contestant by E. M. S. McLaughlin,

her guardian, are complained of, principally, as we understand it, because the court thereby unduly emphasized the relation of Harrah as devisee, whereas he was also executor, and on that ground properly was the proponent of the will; and, also, as pointing him out to be the sole claimant under the will, although, as a matter of fact, the widow would have derived some benefit under its provisions. But these complaints seem to us to be without any substantial force. The widow is not complaining that she was named as contestant, and the court did not say whether Harrah proposed and on that ground properly was the proponent of the will; itself was before the jury, and the circumstances were fully known to them, and no prejudice could possibly have resulted, in our judgment, from the method in which the parties were designated. It is said that McLaughlin as guardian had no right to elect for his ward that she should be treated as contestant, but we see no bearing of this matter on the rights of the appellant. There is no contention that the court did not have jurisdiction to proceed, and the question whether its judgment is binding upon the widow is not one which appellant can raise.

III. Several instructions with reference to mental capacity are complained of on the general ground that they unduly emphasized the requirements as to mental capacity

**3. Same: mental capacity.** to make a will, and reiterated the necessity that the testator possess a mind capable of exercising judgment, reason, deliberation, etc. A reading of the instructions satisfies us that they are a correct statement of the law, and that there is nothing in them tending to mislead the jury in its application to the facts.

IV. Another instruction is objected to because it allowed the jury to consider the mental condition of testator eight years after the will was executed. But nothing in the

**4. Testamentary capacity: evidence.** instruction specifically called attention of the jurors to any evidence as to the mental condition of testator eight years after the execution of the will.

The instruction referred to the evidence, and if the evidence was competent it might be considered by the jury. As to the objections made to the evidence on which the instruction was based it is sufficient to say that the testimony of witnesses for contestants covered a connected period from a time prior to the execution of the will when testator received a severe injury down to the time of his death, and it was entirely proper to thus cover the whole period, for the evidence tended to show that, after the time the injury was received, testator exhibited symptoms of unsoundness of mind, which might be referred to the continuing result of the injury, combined with advancing age. It would not be difficult to cite many cases in which testimony as to mental condition at a period long subsequent to the execution of a will has been held competent, it appearing that the condition testified to has been continuous. See, particularly, *Ashcraft v. De Armond,* 44 Iowa, 229; *Bever v. Spangler,* 93 Iowa, 576.

V. In another instruction the jurors were directed as to the weight to be given to the opinions of expert and non-expert witnesses as to the soundness or unsoundness of testa-

5. SAME: evidence of subscribing witnesses.

tor's mind based upon the facts and circumstances detailed by them. Counsel contend that the rule of the instruction is not applicable to the testimony of the subscribing witnesses. But the instruction does not specifically refer to the testimony of the subscribing witnesses, and it appears that, as a matter of fact, they did explain at considerable length the grounds on which their opinions were based. Under these circumstances, we see no reason why their testimony should not be subjected to the same tests as those applicable to other witnesses, who give opinions as to mental soundness or unsoundness. *Crandall's Appeal,* 63 Conn. 365, (28 Atl. 531, 38 Am. St. Rep. 375). Of course, subscribing witnesses may give an opinion that testator was of sound mind without reciting any particular facts or circumstances, and

other witnesses who were acquainted with him and in a situation to observe his conduct might do the same thing. *Furlong v. Carraher,* 108 Iowa, 492; *Hull v. Hull,* 117 Iowa, 738; *Lucas v. McDonald,* 126 Iowa, 678.

But there is nothing in the instruction complained of negativing the right of the jury to consider the testimony of subscribing witnesses or any other nonexpert witnesses that testator was of sound mind. The jury could not have been mislead into supposing that no weight whatever should be given to the testimony of such witnesses- that testator was of sound mind by the instruction that their opinions should be given weight only in so far as the facts and circumstances detailed by them in evidence gave support to and sustained such opinions.

It is further urged that the instruction in question authorized the jury to give some weight to the opinions of expert witnesses in answer to hypothetical questions, although the facts hypothetically stated were not established by the evidence. But we find nothing in the instruction which contravenes the rule on this subject laid down in *Stutsman v. Sharpless,* 125 Iowa, 335. The instruction related to facts and circumstances detailed by the witnesses, and not facts and circumstances stated to them in hypothetical questions.

6. EXPERT
EVIDENCE:
instructions.

VI. Another instruction is complained of which directed the jury that, other things being equal, affirmative testimony is in general entitled to more weight than negative testimony, and that, if a witness testifies that he did see certain things, and another witness of equal credibility testifies that he did not see such things, then if everything else is equal and such witnesses on either side are of equal credibility, the witness testifying negatively is entitled to less credit than the one testifying affirmatively. It is said that this rule, which certainly has some support in our decisions, has been discredited in *Stanley v. Cedar Rapids & Marion City R. Co.,*

7. AFFIRMATIVE
AND NEGATIVE
EVIDENCE:
weight to be
given same.

119 Iowa, 526, 533, and *Selensky v. Chicago G. W. R. Co.*, 120 Iowa, 113, 116. But in each of these cases the instruction asked to this general effect was held properly refused, because witnesses who gave the so-called negative evidence, or some of them, were in as good a position to hear the sounds and signals referred to in the testimony of the witnesses giving the affirmative evidence as the latter were. But the instruction given in this case is not open to any such objection, and, under the evidence to which the instruction could have been understood by the jury as having reference, there was no error in giving it.

VII. The contestant George Wharton as a witness is conceded to have 'been incompetent, under Code, section 4604, to testify in behalf of contestants as to conversations with his father, or declarations made by his father to him, but his testimony objected to was given on redirect examination, and is to be considered, if at all, because the proponent had opened up the matter with him on his cross-examination. For an understanding of the situation under which the testimony complained of was given, it is necessary to set out portions of the record. On cross-examination, after the witness had testified to having visited his father on various occasions, and going downtown with him, without objection, the following questions were asked and answers given: " Q. What did you do when you went down? A. Just walked around town. Q. Talked, did you? A. Yes, sir. Q. What did you talk about? A. One thing and another. First one thing and another. Q. What would be the first thing or another? A. About his health; how he was getting along, and about being uptown, and the like of that. Q. Your father talked all right? A. Yes; apparently. Q. He always talked all right? A. Yes, sir." The re-examination to which the objections now insisted upon were made was as follows:

8. Conversations with one since deceased: competency of witness.

Q. In your cross-examination, in answer to a question propounded by Mr. Harrah, you said that in 1895 your father talked to you all right; what did you mean by that? A. He talked about like any one would when you went to visit them. Q. Was this before or after his injury? A. Which? Q. That you were talking to him? A. Why, after his injury he would appear all right when he first got well, when he first got up and around, but he never appeared to have a memory like he had, and it always got worse. Q. What I want to know is, when you say he talked all right, was that after he was hurt or before? A. Before he was hurt. Q. I think he was hurt in 1894? A. Yes, sir. Q. when you said in 1895 your father talked with you all right, what did you mean? A. Well, when I would visit him he complained of his arm hurting him and his head hurting him. Q. But you did say on cross-examination that when your father talked with you he talked all right at that time; what did you mean by that? A. I don't know as I understand. Q. Did you mean by that that he was all right in his mind? A. No, sir. Q. In the talks you testified to in 1895, on cross-examination you may state what, if anything, was said at that time in regard to his mental or physical condition. (Objected to as incompetent, immaterial, and irrelevant, to relate to a conversation with the decedent, both the witness, the evidence, and the question being incompetent under section 4604 of the Code as to personal conversations with witness and decedent.) Court: He may answer, confining it to those conversations in 1895, inquired about in cross-examination. (Proponent excepts.) A. Poorly, very poorly. Q. What was said as to his condition; what did he say as to whether his mind was strong or weak, whether its condition was good or bad? (Same objection. Overruled, and proponent excepts.) A. Bad. Q. He said what was bad? (Same objection. Overruled, and proponent excepts.) A. His health. Q. What did he say about his mind, if anything? (Same objection. Overruled, and proponent excepts.) A. Well, he said his mind was not very good; that he could not recognize people when he would meet them. Q. Now, did he say this about his mind in these talks to which I have called your attention? (Same objection. Overruled, and proponent excepts.) A. Yes, sir; pretty near every time I would see him. Q. I mean,

confining yourself to these talks that you had with him in that year 1895 ? (Same objection. Overruled, and proponent excepts.) A. Yes, sir; always. Q. You may state whether or not he complained of any pain in his head, and, if so, what he said, in any of these talks. (Same objection.) Court: In any of these talks in 1895, while walking around Kellogg. (Proponent excepts.) A. He always complained of the back of his head hurting him, and his shoulder and his arm. (Proponent moves to strike out the answer for the same reasons stated in the objection. Overruled, and proponent excepts.) Q. In these talks in 1895, what else, if anything, did he say in regard to his property, and the disposition he was going to make of it, if anything ? (Same objection, and leading.) Court: He may answer what was said in any of these talks, walking around Kellogg, in 1895, and to which he testified in cross-examination. (Proponent excepts.) A. Well; he always said Mr. Harrah was doing his business for him and handling his property and money.

It is plain that the redirect examination related to the conversations of witness with his father, and declarations of his father to him, to which reference was made in the cross-examination, and it was therefore proper. *Fox v. Barrett's Estate,* 117 Mich. 162, (75 N. W. 440) ; *Lange v. Klatt,* 135 Mich., 262, (97 N. W. 708). It is to be noticed that the effect of the cross-examination was to secure from the witness a statement that he had conversations with his father, and that in those conversations his father " talked all right." Now, it was certainly competent for the purpose of overcoming the effect of this evidence, if possible, to have the witness relate just what his father said which led him to testify on cross-examination that the conversation of his father was such as to indicate a sound mind; and the court strictly limited the redirect examination to the very matters testified about in cross-examination. There was no error in the ruling.

VIII. Error is assigned in allowing to contestant the opening and closing of the argument to the jury. But there was no controversy in the evidence as to the fact of the

execution of the will, the only issues submitted to the jury

**9. ARGUMENT:** being as to mental capacity, and undue in-
right to
open and fluence, and there was no error, therefore, in
close.
holding that the burden was on contestants which would
entitle them to the opening and closing.

IX. Misconduct of counsel for contestants in the open-
ing statement to the jury is urged as error, the particular
complaint made being that the financial condition of testator

and of Harrah at the time the will was
**10. NEW TRIAL:**
misconduct executed was emphasized and relied upon as
of counsel.
tending to show the unreasonableness of the
devise of all testator's property to Harrah, who was his
attorney and had had charge of business for him, to the
exclusion of his widow and next of kin.  The financial
circumstances of the testator and the devisee may, however,
be properly taken into account in determining whether the
will is so unreasonable as to indicate a disordered mind
or the working of sinister influences.  *Manatt v. Scott,* 106
Iowa, 203.  And the fact that the statements made in argu-
ment were not fully borne out by the evidence is not necessar-
ily a ground for reversal, especially where the court has cau-
tioned the jury, as in this case, that they are not to take
into account extraneous matters, statements, and suggestions
not supported by the evidence.  This court will not inter-
fere with the discretion of the trial court in refusing to grant
a new trial on account of alleged misconduct of counsel
in argument, unless it is made to affirmatively appear that
such discretion has been abused to the prejudice of appellant.
*Sunberg v. Babcock,* 66 Iowa, 515.

There was sufficient evidence of unsoundness of mind
at the time of the execution of the will to sustain the ver-
dict of the jury, and, finding no errors in the rulings as to
introduction of evidence, or in the submission of the case
to the jury, or in the instructions given on the subject of
testator's soundness of mind, the judgment of the trial court
is *affirmed.*