### AS TO UNDUE INFLUENCE OVER A TESTATOR.

Common Pleas Court of Hamilton County.

ELLEN O'ROURKE v. MARY KENNY ET AL.

Decided, June, 1911.

*Wills—Undue Influence—Alleged to Have Been Exercised by a Second Wife—Whose Children Fared Better than Those of the First Wife.*

Undue influence over a testator on the part of his second wife is not shown by the fact that the children of the second wife fared better than the contestant, a child of the first wife, where the second wife was not herself given an undue proportion of the estate.

*Overbeck, Kattenhorn & Park,* for plaintiff.
*J. D. Creed and F. P. Mulhauser,* contra.

O'CONNELL, J.

This was an action brought by the plaintiff to set aside the will of her father, the defendants being the executrix and other beneficiaries under the will. The jury returned a verdict set-

ting aside the will. The matter now comes up on motion of defendants to set aside such verdict.

Syllabus 1 of the case of *Monroe* v. *Barclay*, 17 O. S., 302, is as follows:

"To invalidate a will for fraud or undue influence, it must appear that the fraud or influence complained of, had some effect upon the testator, in producing the very act of making his will."

There was no evidence offered on behalf of the contestants bearing on this very vital question as to the surroundings and condition of the testator at the time of the execution of the will.

In the case of *Ketterman et al* v. *Metzger*, 3 C.C.(N.S.), 224, at page 240, the court cites with approval the following quotation from 25 Enc. Law (1st Ed.), 970:

"A person who, at the time of making his will has an understanding of the nature of the business in which he is engaged a recollection of the property he means to dispose of, of the persons who have a claim upon his bounty and the manner in which it is to be distributed, has sufficient mental capacity to execute a will."

The court then proceeds to review the evidence as disclosed by the bill of exceptions, and reaches the conclusion that the jury under the evidence was not justified in setting aside the will.

The contestants in the case at bar rely upon the influence exerted by the wife over the mind of her husband, the testator, claiming that it was undue influence and making that the chief ground for attack upon the will.

The widow is given no undue proportion of the estate, but it is claimed that she induced her husband to give larger portions to her children than to the plaintiff, the only child of the testator's former marriage.

The Supreme Court of Iowa, in the case *In re Townsend's Estate*, 122 Iowa, 246, hold that:

Syl. 10. "There is no presumption that a will, made in harmony with the wishes of the wife of testator, is the result of undue influence."

The rule of the federal courts in matters of this kind is stated in the case of *Beyer* v. *LeFevre*, 186 U. S., 114, syllabus 4:

"It is the rule of the federal courts that the will of a person found to be of sound mind and memory, is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence."

The most comprehensive decision in suits of this character with which I am familiar is that found in the case of *Ginter* v. *Ginter*, 79 Kansas, 721, the syllabi of which are as follows:

"1. To destroy the validity of a will, undue influence must amount to coercion, compulsion or constraint which destroys the testator's free agency and by overcoming his power of resistance obliges him to adopt the will of another instead of exercising his own. It must be brought to bear directly upon the testamentary act, and particular parties must be benefited or disfavored as the result of the purpose and pressure of the dominating mind.

"2. Generally the same considerations control when a testator is unduly influenced by misrepresentations and artifices usually comprehended by the term 'fraud.' Although in strictness fraud and undue influence are distinguishable, more oft than otherwise it is a mere matter of a choice of terms. Always something sinister is involved which perverts the testator's will by overcoming his power truly to express his real desires.

  \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"6. Suspicion, conjecture, possibility or guess that undue influence or fraud has induced a will is not sufficient to support a verdict to that effect.

"7. Power, motive and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised.

"8. The mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator, and does not cast upon the beneficiary the burden of disproving undue influence. Those consequences follow only when the beneficiary has been actively concerned in some way with the preparation or execution of the will.

"9. The right to make a will includes the right to make it according to the testator's own desires, subject only to the statutory restrictions. It is no condition of this right that the will shall please a jury, or a court, or the testator's relatives, or any one else. The giving of unequal portions to the natural objects

of the testator's bounty raises no presumption of undue influence. The fact may be considered in determining the question, is this the testator's will? But in the absence of proof of undue influence it has no weight.''

The evidence offered on behalf of the contestant in the case at bar is not such as to bring it within that class of evidence which the authorities cited hold should be required in order that a jury be justified in setting aside a will on the ground of undue influence or mental incapacity.

The court holds that the verdict is against the weight of the evidence, that it should be set aside, and a new trial granted.