SOPHIA H. CLAWSON, Appellant, v. EMMA WEBBER, et al.

**Conveyances:** MENTAL CAPACITY: BURDEN OF PROOF. In seeking to set aside a deed on the ground of mental incapacity and undue influence the burden of establishing the incapacity is upon the plaintiff. In the instant case the evidence is held insufficient to show lack of mental capacity.

**Same:** UNDUE INFLUENCE: EVIDENCE. Neither the unreasonableness of a will or conveyance alone, nor mere love and affection between parent and child is sufficient to show undue influence; nor will a consideration for the welfare and comfort of either parent or child establish such influence, or raise a presumption that it was exercised; although in cases where the testator or grantor was old and infirm, and reposed great confidence in a child, a transaction for the benefit of the child will be closely scrutinized, and he will be required to show its good faith. The evidence is held insufficient to show undue influence.

*Appeal from Henry District Court.*—HON. W. S. WITHROW, Judge.

MONDAY, OCTOBER 21, 1912.

SUIT in equity to set aside a deed on the grounds of mental incapacity and undue influence. Judgment for the defendants. Plaintiff appeals.—*Affirmed.*

*J. C. McCoid,* for appellant.

*W. F. Kopp,* for appellees.

SHERWIN, J.—Mrs. Wilhelmine Lucrode died on the 15th day of February, 1906, leaving four children surviving her, to wit: Sophia A. Clawson, the plaintiff in this action, Mrs. Pixley, who at the time of her death and for many years prior thereto lived in Kansas, Carrie Tovera, and Emma Lucrode. Mrs. Lucrode became ill on the 3d day of February, 1906. On the 10th day of February she executed a deed of her property in favor of Carrie Tovera and Emma Lucrode, and it is this deed that the plaintiff asks to have set aside, because of the mental incapacity of the grantor, and because of the undue influence of the grantees. We shall not attempt to recite any considerable part of the evidence received on the question of the grantor's mental capacity for years before, and at the time she exected the deed. A brief history of the family and our conclusion from the evidence will suffice so far as this branch of the case is concerned. Mrs. Lucrode had been a widow for a great many years. Mrs. Clawson, the plaintiff, was married and left home over thirty-five years before the death of Mrs. Lucrode. The greater part of this time she lived with her husband and family in Mt. Pleasant, where Mrs. Lucrode resided, and for several years immediately preceding her mother's death she lived on the back end of the same lot that her mother lived on.

After the marriage of Mrs. Clawson, she did not in any way assist in caring for her mother, nor did her mother

at any time live with her.   For at least eight years prior to Mrs. Lucrode's death she and the plaintiff had not been on good terms.   They did not visit or call on each other, nor did they have any communication of any kind.   During this time the habits of Mr. Clawson and his son were not good, and did not meet the approval of Mrs. Lucrode, and Mr. Clawson had no more to do with Mrs. Lucrode than did his wife.   At the time of Mrs. Clawson's marriage, the only property that Mrs. Lucrode owned was a little house and lot worth about $400, with an indebtedness of about $200. The family had before this time owned a home in Missouri, which was sold for $250, and the proceeds thereof divided among the members of the family; Mrs. Clawson getting her share.   Subsequent to the marriage of Mrs. Clawson for a number of years the daughters Carrie and Emma and their mother lived together, and supported themselves by sewing.   Emma graduated from the public schools, and then attended the Iowa Wesleyan University at Mt. Pleasant for two years, graduating there in 1878.   She earned her own way through school.   After her graduation, she continued to do sewing with her mother and sister Carrie until 1882, when she began teaching in the Mt. Pleasant High School, where she taught about six years. She subsequently taught in the public schools of other cities and in a college located in Kansas.   In 1883, while she was teaching in Mt. Pleasant, her mother bought a house and lot in Mt. Pleasant, for which she contracted to pay $1,500 in installments, and soon thereafter the family moved into this house.   Mrs. Lucrode lived there until her death.   This property was practically paid for with money earned by the daughter Emma in teaching.   In 1887 the two daughters, Carrie and Emma, and their mother, bought another lot in Mt. Pleasant for $400, and received a joint deed.   There was a building on this lot that was owned by a party other than the owner of the lot, and this building Emma bought.   The property that Mrs. Lucrode owned

and deeded to her daughters on the 10th of February, 1906, was the property that she owned at the time of the plaintiff's marriage, the property that had been purchased in 1883 for $1,500, had been principally paid for with Emma's money, and her one-third interest in the lot purchased in 1887 by herself and two daughters for $400. The daughter Carrie was married somewhere about 1889, and for the ten years immediately preceding her mother's death she lived next to her on the same lot, where she and her husband conducted a restaurant. Carrie and her mother were always affectionate and friendly, and the relations existing between Emma and her mother were especially intimate. The record discloses but little in relation to the history of Mrs. Pixley, but, as neither she nor her heirs joined in this suit, the matter is not material.

The burden of proof is, of course, upon the plaintiff to show that Mrs. Lucrode was mentally incompetent to make the conveyance in question. To sustain this branch of her case, she relies principally on evidence tending to show that some twenty years or more before the death of Mrs. Lucrode she was melancholy, and on one or two occasions attempted to commit suicide, and on the further fact that she for many years before her death refused to have any relations with the plaintiff or her family. The record discloses sufficient reasons for Mrs. Lucrode's conduct and bearing towards the plaintiff and her family. There was friction between them, and, if it be conceded that the conduct of Mrs. Lucrode was just as represented by the plaintiff, it would fall far short of proving mental incapacity to make a deed, or, in fact, anything more than settled ill feeling, resulting in occasional displays of temper. The evidence touching the question of attempts at suicide is not at all convincing, but, conceding that it is all true, it does not establish mental incapacity at the time the deed was executed. The evidence is practically conclusive that

1. CONVEYANCES: mental capacity: burden of proof.

Mrs. Lucrode was in full possession of her mental faculties up to the time of her death. Prior to her fatal illness, she had always been physically well, and while her sickness was severe and her decline rapid, she seems to have retained her mental vigor as fully as is usual. Two physicians of repute, who attended her, testify that she was in full possession of her mental faculties up to the last. Plaintiff attempted to show that deceased was physically very weak, and at least partly unconscious on the day that she executed the deed. That she was physically weak at that time is conceded by all, but the overwhelming weight of the evidence is that she was mentally active and bright.

II. The evidence relied upon to show undue influence in much weaker than that depended upon to show mental incapacity. Practically all there is of it is the claimed un-

2. SAME: undue influence: evidence.

reasonableness of the conveyance and the close relationship existing between the mother and her two daughters, the grantees. The conveyance was not unreasonable. So far, at least, as the daughter Emma is concerned, it would have been unreasonable for her mother to have made any disposition of the property that would have taken from her the fruit of years of hard labor in her mother's behalf. The plaintiff had no claim on the property. She had contributed nothing towards its accumulation, nor towards the support of her mother during the years of her poverty, and she certainly is in no position to complain because of the conveyance to Emma, nor because of the conveyance to Mrs. Tovera, for the reason that Mrs. Tovera was a true daughter and not a stranger in every respect but blood. In any event, the unreasonableness of a will or conveyance is not alone sufficient to show undue influence. *In re Townsend's Estate,* 122 Iowa, 246.

Mere love or affection between parent and child does not alone tend to show undue influence, nor does a careful consideration for the comfort and welfare of either establish such influence, or raise a presumption that it has been exer-

cised. *Hanrahan v. O'Toole,* 139 Iowa, 229; *Johnson v. Johnson,* 134 Iowa, 33; *Reeves v. Howard,* 118 Iowa, 121; *Mallow v. Walker,* 115 Iowa, 238. In cases where the testator or grantor was old and infirm and reposed especial confidence in his child, we have held that transactions resulting in benefit to such child will be closely investigated, and that in such cases the burden is on the grantee to show the *bona fides* thereof. *Reese v. Shutte,* 133 Iowa, 681; *Brant v. Brant,* 115 Iowa, 701. Without conceding that the condition of Mrs. Lucrode and the relationship existing between her and her daughters would bring this case within the rule last stated, we say that, if such were the case, the burden has been fully met by these defendants. The execution of the deed is shown to have been the deliberate and voluntary act of Mrs. Lucrode. The evidence also conclusively shows a delivery of the deed to the grantees immediately after its execution, and its acceptance by them.

This judgment is right, and it is—*Affirmed.*