## IN RE ESTATE OF JULIA AUSTIN.

**WILLS: Testamentary Capacity—Evidence.** Evidence reviewed, and
1  held ample to support a verdict of mental incapacity to execute a valid will.

**EVIDENCE: Opinion Evidence—Cross-Examination of Experts.** Prin-
2  ciple reaffirmed that the extent to which an expert witness as to insanity may be cross-examined *as to purely imaginary or abstract questions* must be left to the fair discretion of the court.

**WILLS: Probate—Counsel Fees for Unsuccessful Proponent.** An un-
3  successful proponent of a will may not have his attorney fees taxed against the estate, even though he be the executor, and even though the court, prior to the trial of the contest, had assumed to authorize the proponent to employ an attorney at the expense of the estate.

**WILLS: Probate—Progressive Mental Decay—Evidence.** The records
4  pertaining to the appointment of a guardian for an alleged mentally incompetent testator, even though had *subsequent to the execution of the will*, are admissible, when the testimony tends to show that the testator was the victim of a slowly progressive mental disease, antedating the date of the execution of the will.

*Appeal from Clay District Court.*—D. F. COYLE, Judge.

DECEMBER 15, 1922.

Will contest, based on charges of mental incapacity and undue influence. The case was submitted to the jury on both issues. The jury found, on special interrogatories submitted, that testatrix was mentally incapable of making a will, but that she was not unduly influenced; and it returned a verdict for contestants. Judgment was rendered on the verdict and special findings setting aside the will. Proponents appeal.—*Affirmed.*

*Healy & Breen,* for appellants.

*Lee & Garfield* and *Heald & Cook,* for appellees.

Arthur, J.—I. The principal contention of counsel for appellants in argument is that the evidence offered by contestants was not sufficient to warrant the court in submitting the case to the jury, and was insufficient to support the verdict, and that proponents' motion for a new trial should have been granted. Proponents, appellants here, made no motion for a directed verdict. Error is claimed, directed to the cross-examination of Dr. Munger, charging that the court erred in sustaining certain objections, and circumscribed counsel too closely in cross-examination; that error was made by the court with respect to submitting interrogatories and the special findings thereon, in refusing to tax attorney fees against the estate in favor of proponents' attorneys, and as to admission of certain exhibits, which assigned errors will be considered later. We will first take up appellants' contention that the verdict does not find sufficient support in the evidence.

II. The record is very lengthy. Some 40-odd witnesses testified. Only two of the witnesses were expert witnesses—doctors called by contestants. Proponents offered no expert testimony. It would be impracticable to attempt to set forth the testimony. We have carefully read the large volume of testimony, and will state our conclusions based on the record. Counsel cite a large number of authorities. Authorities in such a case as we have before us, where the principal contention is that the evidence was not sufficient to support the verdict, are of value in the way of comparison of the facts and holdings thereon in the cases

1. **Wills:** testamentary capacity: evidence.

cited, with the contentions in the case at bar. We have examined the authorities for that purpose. The large question is one of fact, and must be determined from the evidence presented to us. Some undisputed facts stand out prominently in the record, to which we call attention:

On March 27, 1918, Julia Austin signed the instrument in controversy, which was properly witnessed, wherein she bequeathed all her property to the proponents, A. M. Leichliter and his wife. Leichliter and his wife were in no way related to the testatrix. Julia Austin, at the time she made the will, was nearly 80 years of age. She was of Norwegian birth, having come to this country when about 30 years old. She could neither read nor write, being unable to write so much as her own name. She could speak but little English. She was married to W. H. Austin about 1870. Mr. Austin died October 20, 1917. Julia Austin, at the time of the execution of the will, was feeble in body, and afterwards rapidly declined in health and mind, and on March 12, 1919, less than a year after the execution of the will, was placed under guardianship. A. M. Leichliter was appointed temporary guardian of her property. On July 25, 1919, information charging insanity was filed by Leichliter, and a hearing was had before the commissioners of insanity of Clay County, Iowa, and Julia Austin was found insane, and taken to the hospital for the insane at Cherokee. She remained in that institution until her death, in February, 1920. Testatrix was almost, if not quite, devoid of her reason from the summer of 1919 until she died, in the winter following. Mrs. Austin was the unfortunate victim of epilepsy, and had been subject to epileptic seizures all her life. These attacks became more frequent as the years advanced, as well as increasing in intensity. Mrs. Austin never transacted any business herself. It appears without dispute that Leichliter, appellant, transacted all her business for her after the death of her husband. From the testimony of her neighbors, who had known her for a long time, it appears that in her earlier years she was clean and neat of person, active and industrious; that, prior to the time the will was made, she became filthy of person and lazy and indolent in her habits. Appellant Leichliter and his wife both testified that, during the 15 months preceding her confinement in the

hospital for the insane, when she was living with them, they could not induce her to take a bath; that, during all of that time, she stayed in bed until from 12 o'clock, noon, to 2 o'clock in the afternoon, taking her first meal of the day at from 12 to 2. She commenced living with appellants about 30 days after the execution of the will, but appellants had intimately known her for some years before. Formerly, she was on most friendly terms with her relatives, but during her later years, she was suspicious of them, accusing them, without any foundation whatever, of seeking to rob her of her money, of scraping the gold off the edges of her china, of tearing her books, etc. From the 1st of July, 1919, up to her death, in February, 1920, it is conceded that she was devoid of all her mental faculties, unable during all that time to know where she was, or to recognize her nurse or doctor in charge. When she was taken to the hospital, appellant Leichliter testified, at the hearing before the commissioners of insanity, that symptoms of her mental condition had manifested themselves for five years prior to July, 1919.

Dr. Donahoe, superintendent of the hospital at Cherokee, examined her on her entrance to the hospital on July 26, 1919, and saw her frequently during the seven months she was in the hospital. Donahoe testified, in substance, that she was afflicted with senile dementia in its most advanced stages, and that such condition was of long standing; that her disease was slowly progressive, and had been developing for years. Dr. Donahoe, from his personal examination of the old lady, testified that in his opinion she was insane on and prior to the date of the execution of the will.

Dr. Munger, of Spencer, who was a member of the commissioners of insanity, and who examined Mrs. Austin, stated as his opinion that Mrs. Austin's deranged mental condition, which was conceded to have existed a year after the will was executed, was of long standing—of years; that she was mentally unbalanced long prior to March 27, 1918, the date of the will.

Proponents offered no expert evidence to dispute the testimony of Dr. Donahoe and Dr. Munger.

We will not set forth the nonexpert testimony. It is sufficient to say that we have carefully examined the testimony of the witnesses who were neighbors of Mrs. Austin and knew her

well, and such evidence strongly corroborates the testimony of the doctors, and to our minds is convincing that Mrs. Austin did not have sufficient mental capacity to make the will in question. It is conceded that Mrs. Austin was absolutely insane when the doctors examined her. The doctors stated it as their opinion that the insanity was of long standing, and had existed long prior to the execution of. the will. We think that such testimony is entitled to much weight, and, taken together with delusions and hallucinations and unnatural and strange acts testified to by neighbors, was sufficient to support the verdict finding that Julia Austin was of unsound mind at the time she signed the instrument in question. The evidence strongly tended to prove, we think, that she did not comprehend her property nor the objects of her bounty.

After a careful examination of the record, we regard the case made by contestants as much stronger than many of the cases cited, where verdicts for contestants have been sustained or reversal ordered because the trial courts directed verdicts for proponents on the ground of insufficient evidence. We are familiar with the cases cited by appellants. Counsel for appellants rely upon many cases cited by them, but mainly on *In re Will of Byrne,* 186 Iowa 345; *In re Will of Kester,* 183 Iowa 1336. Neither of these cases is quite similar to the case before us. There was no evidence in the *Byrne* case showing slowly progressive mental derangement. In that case, we observed that the testator "never at any time until his death relinquished the personal management of his property and business." Mrs. Austin, after her husband's death, did not transact her business. In the *Kester* case, the court found that there was no evidence of any general mental derangement at any time.

III.   Counsel for appellants urge that the court erred in sustaining contestants' objections to some questions asked Dr. Munger on cross-examination. We think such complaint is

2. EVIDENCE: opinion evidence: cross-examination of experts.

without merit,—at least that there was no prejudicial error committed. The cross-examination was not narrowly circumscribed. Before the rulings on objections complained of, counsel for proponents had already cross-examined Dr. Munger at great length, going over the facts and circumstances stated in the hypothetical question

which Dr. Munger answered. Perhaps the court should have permitted answer to the cross-interrogatories propounded by counsel for appellants, although they were not closely germane to the examination in chief. It is the rule, as contended by appellants, that, on cross-examination of an expert, counsel has the right to test the expert by hypothetical questions based on his view of the facts, or even on imaginary facts. *In re Will of Bever*, 93 Iowa 576. In the *Bever* case, we said:

"The rule is well understood, we think, that experts may be cross-examined on purely imaginary and abstract questions, assuming facts and theories which have or have not foundation in the evidence, and that the allowance of all such questions rests in the sound discretion of the court. Where such discretion is fairly exercised, we will not interfere."

We have also said, in substance, in several cases, and particularly in *In re Estate of Swain*, 189 Iowa 28:

"The extent to which cross-examination of a witness may be pursued, and the allowance of evidence in rebuttal, if not otherwise objectionable, are matters left very largely to the discretion of the trial court."

Counsel for appellants had subjected Dr. Munger to a long, crucial, and able cross-examination, before the ruling complained of. Counsel had gone over substantially the same matters inquired about in the interrogatories to which answers were not permitted. We think appellants were not prejudiced by the ruling.

IV. Counsel for appellants complain that the special findings and the general verdict were not in harmony, and that the court erred in making the special findings conform to the general verdict, rather than to require the general verdict to conform to the special findings. We find nothing in the record to substantiate counsel's claim on this point.

V. Appellants complain of error because, as they say, the special interrogatories were not submitted to counsel for proponents before argument commenced, as provided by Code Section 3727. The record does not disclose what transpired in this particular, and we will assume that no error was committed.

VI. Appellants urge that the court erred in refusing to tax attorney fees in favor of proponents' attorneys against the

estate, and especially because, before entering upon the trial, the court had made, on application of appellants, the following order:

3. **WILLS: probate: counsel fees for unsuccessful proponent.**

"Upon consideration of the foregoing application, it is ordered that the said executor named in said will be authorized to defend said will and employ counsel so to do, at the expense of said estate."

The writer recognizes injustice in such a situation. It would seem to be the duty of the nominated executor to endeavor to sustain the instrument purporting to be the will, and to do so, he must employ counsel; and it would seem to be right that a reasonable attorney fee should be paid counsel for services rendered in an effort to probate the will. But such is not the rule announced by our court. Counsel for appellants acknowledge that they are familiar with the rule laid down by this court that unsuccessful proponents of a will cannot have their attorney fees taxed to the estate. *In re Estate of Burgin,* 191 Iowa 898.

VII. Appellants assign as error the admission in evidence of the record and files in the proceeding for appointment of guardian of Julia Austin, because the guardianship proceedings were had nearly a year after the will in question was executed. In the instant case, it was claimed that permanent, general, mental derangement of testatrix existed, due to a slowly progressive mental disease, which proved to be fatal within a short time after the will in question was executed. Where there is evidence tending to show such a situation, it is well settled that evidence of occurrences at times prior and subsequent to the execution of the will is properly admissible. *In re Estate of Workman,* 174 Iowa 222; *In re Will of Wharton,* 132 Iowa 714; *In re Will of Bever,* supra.

4. **WILLS: probate: progressive mental decay: evidence.**

We think that appellants were afforded a fair trial. We think the evidence sufficient to support the verdict. We find no error in the record which warrants disturbing the verdict and judgment of the court. The case should be, and it is, affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and DE GRAFF, JJ., concur.

FAVILLE, J., having been of counsel, takes no part.