Hamill et al., Appellant, v. Phila. R. T. Co.

Argued October 16, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Michael J. Geraghty,* for appellant.

*Thomas B. K. Ringe,* and with him *John J. K. Caskie,* for appellee.

OPINION BY BALDRIGE, J., January 29, 1930:

These two actions were tried together as they grew out of the same occurrence. Compulsory nonsuits were granted in both cases and these appeals followed.

On Saturday, October 2, 1926, about three o'clock in the afternoon, the car of Thomas Hamill, Jr., one of the plaintiffs, was parked along the curb, facing south, in front of his father's house at 810 South Forty-ninth Street, Philadelphia. To the east of the automobile

and between it and the south bound trolley car tracks, Eleanor Hamill was standing, and her mother, Rose Hamill, was seated in the rear seat of the automobile. A heavy wagon drawn by two horses came on to Forty-ninth Street at Baltimore Avenue. The wagon was astride the westernmost rail and kept in that position as it proceeded in a southerly direction until it came to the automobile. Then a trolley car hit the wagon, causing it to collide with the automobile. The driver of the wagon testified that he knew for the first time at Lawrence Street that the trolley was following in his rear, as it was then he heard the motorman ring the bell. He did not change his course as he intended to pull over the tracks after he had passed the automobile.

The lower court was of the opinion that the evidence was too vague to establish the negligence of the motorman, and that the proximate cause of the injury to the mother and daughter and the damage to the car was too speculative to justify the submission of the cases to the jury. We are unable to agree with that view.

Scott, the driver of the wagon, testified that the trolley hit the left rear hub of his wagon and pushed it against the automobile. Defendant contends that if the wagon was astride the rail, as Scott said, it was a physical impossibility for the wagon to be hit as he described. As we view the testimony, the trolley probably pushed the wagon to the left and then hit the hub. The exact point of contact between the trolley and the wagon, however, is not so important. The fact remains that according to the plaintiffs' testimony, which is supported by the physical facts, the trolley hit the wagon and it in turn was pushed with such force against the automobile as to cause the injuries to the plaintiffs. The driver of the wagon should have promptly as practical given the right-of-way to the trolley, but his failure so to do did not

justify the motorman knocking the wagon off the tracks with such force as to cause injuries to the plaintiffs and damages to the automobile. Nor did a failure on the part of the driver of the wagon to perform his duty relieve the defendant, as the proximate cause of the damages sustained may not be necessarily the sole cause: Community Fire Co. v. Pennsylvania Power & Light Co., 92 Pa. Superior Ct. 304. The evidence showed that the trolley ran into the wagon in daylight after following it at least one hundred and fifty feet, with no obstacle to interfere with the motorman's view. It was the duty of the motorman under such circumstances to approach that wagon with his car under control and to use due care to prevent the accident.

This case falls within the doctrine that "where the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen when those who have the management use proper care, it affords reasonable evidence, in absence of explanation by the defendants, that the accident arose from a want of care, and the burden is upon the defendants of establishing their freedom from fault": Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Kensington Carpet Co. v. Phila. Rapid Transit Co., 84 Pa. Superior Ct. 114; Latella v. Breyer Ice Cream Co., 87 Pa. Superior Ct. 325.

The injuries to the plaintiffs and the damage to their car were the ordinary and natural result of the alleged negligence. There was no independent or intervening cause to have produced those results: Boggs v. Jewel Tea Co., 266 Pa. 428.

We find no trouble in reaching the conclusion that it was for the jury to say whether defendant was negligent, and, if so, was his negligence the proximate cause of the plaintiffs' injuries.

The judgments are reversed and the venire facias de novo is awarded in both cases.