**SUTFIN, Admr., Plaintiff-Appellee, v. BURTON, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22041.   Decided August 6, 1951.

Spieth, Spring & Bell, Cleveland, for plaintiff-appellee.
Bulkley, Butler & Rini, Cleveland, for defendant-appellant.

## OPINION

By HURD, J:

The parties herein will be designated as plaintiff and defendant as they appeared in the trial court.

This action in tort for wrongful death originated in the Common Pleas Court of Cuyahoga County and is here on appeal on questions of law from a verdict and judgment for the plaintiff in the sum of $35,500.00.

The plaintiff is the duly appointed and qualified administrator of the estate of his wife, Margaret D. Sutfin, late of the Village of Gates Mills, Ohio, who died on January 19, 1948, leaving surviving her the plaintiff and three adult children in whose behalf the action is brought.

The defendant is the owner of a country estate located on

Foxboro Road in the Village of Gates Mills in the vicinity of the Polo Field and Old Mill Road, the residence on his property being a distance of about one-half mile from Berkshire Road in said Village.

On the night of Jan. 18, 1948, plaintiff with his deceased wife seated beside him was traveling in his Plymouth Sedan in a northerly direction on Berkshire Road in Gates Mills Village when he encountered three horses running loose on the highway. When he first observed the horses they were approaching his car in single file in a southerly direction along the easterly edge of the pavement. He operated his car past the first two horses safely, but a draft horse, the third in the line, reared up on its hind legs and brought its fore legs down on the top of the car with such force and violence that the right front top of the car was caved in and the windshield and supports shattered. Mrs. Sutfin who was seated at the point of impact was so seriously injured that she died the following day.

The events preceding the fatal accident are clearly shown in the evidence, particularly in the admissions of the defendant. The defendant testified in substance that on the night of Jan. 18, 1948, he had been at his residence in Gates Mills and that about 6:45 P. M. he left by automobile to put some straw in the "duck pen" located at an extreme corner of his property. It was a very cold night, the temperature being about zero, and it was getting dark as he left his residence. In order to reach the duck pen he drove his car down a lane which runs through a narrow opening between the stable and shed. The shed is in the corral or pasture designated as "pasture A." He opened the gates of the pasture and drove his car through, leaving the gates open, although he knew there were three horses in pasture A at the time, a pony, a riding horse and a draft horse, all owned by defendant. When he returned from the duck pen he again drove through the pasture gates which he then closed. It was shortly after this that he noticed that the three horses had escaped through the open gates while he was at the duck pen. When he first saw them they were cantering or galloping up a path which led up a hill, the three horses being at the time the defendant first noticed them, about fifty to seventy feet from the bottom of the hill. Defendant stood and watched the horses until they had reached a point about three-quarters of the way up the hill but he did not pursue them. The defendant testified that the best judgment he could use at that time was to leave them alone and then go down to his house, check in, and then endeavor to go up on the far flank on the

outside and see.if in some way he could maneuver them home. Instead of pursuing this plan, however, he told the Police Chief, who was visiting at his home at the time, to go out and look for them. As events disclosed, the Police Chief rode around in his car but never saw the horses until after he was notified of the accident by the police of a neighboring township. At about 7 P. M. defendant went to the Chagrin Valley Hunt Club for dinner. At 8:20 P. M. according to his testimony, he was notified by telephone at the Hunt Club of the accident which led to the death of plaintiff's decedent.

Another fact to be noted, is that adjoining defendant's property are two other properties known respectively as the Ammon and Ginn estates, both of which are large properties with driveways leading into Berkshire Road.

Defendant on cross-examination, testified that he knew that the horses, if up on the high land of the Ammon property, could then stray out out onto the highway into Berkshire Road and then go up the highway into the Ginn property. The evidence shows that there are gates located on the driveway entrances to both of these properties. Defendant testified that he knew of these gates but did not telephone either the Ginn or the Ammon residence to notify them of the escaped horses with a request to close the gates.

Other evidence in the record shows that the horses had wandered from the Ammon property on to the adjoining Ginn property; that they had been around the Ginn barn where the Ginn horses were secured and that finally they found their way out of the Ginn estate service driveway on to Berkshire Road and galloped or trotted from 100 to 150 feet to the point where the accident occurred.

Plaintiff claims that his wife's death was due to the negligence of defendant in two respects; (1) in permitting the animals to escape from the pasture in which they were confined, especially the draft horse which caused the accident, when he opened the gates of the corral or pasture; (2) in failing, after the escape of the horses, to take the reasonable steps which would be proper to retake and reconfine them and thereby to prevent them from straying onto the public highway.

The eight grounds of error assigned by defendant, for purposes of discussion can readily be condensed and considered as follows:

1. The verdict is manifestly against the weight of the evidence.

2. Misconduct of a juror.

3. Error in charge of court, both before and after argument.

4. Verdict grossly excessive, appearing to have been rendered under the influence of passion and prejudice.

We shall first consider the claim that the verdict was manifestly against the weight of the evidence.

Negligence is never presumed, but is a question of fact for the determination of the jury under proper instructions of the trial court.

In the instant case, on the admissions of defendant himself, he opened the gates of the paddock where the horses were pastured permitting them to escape; in addition to this he saw the horses after they had escaped. There were means readily available to prevent the horses from entering upon the highway but no effectual steps were taken to prevent the animals from straying on to the public highway. The defendant testified that he was familiar with the habits of horses and had been riding horses since he was two years of age. In addition he testified that he was Master of the Hunt of the Chagrin Valley Hunt Club and engaged in fox hunting through this territory and therefore was familiar with the terrain of the surrounding countryside. In view of these and other facts and circumstances, we must conclude that there was ample evidence to justify the jury in finding defendant negligent upon either one or both of the specifications charged. Therefore we conclude that the verdict of the jury was not manifestly against the weight of the evidence and the assignment in that respect must be overruled.

The claim of error in respect of misconduct of a juror is predicated on the claim that juror, Nellie A. Hoover, withheld information regarding a claim she filed in the United States Court at Cleveland Ohio, Mar. 4, 1950, arising out of the steamship "Noronic" disaster on Sept. 17, 1949. The specific question asked by counsel was as follows:

"I would like to ask you all, have any of you got any kind of litigation of any sort pending in any court either where you have brought suit or where somebody else has sued you?"

When the question of misconduct was raised, after the trial, an affidavit was filed by Nellie A. Hoover, which in substance shows that on Sept. 17, 1949, she was a passenger on the steamship "Noronic" (occupying stateroom 8, Deck D) which steamer was destroyed by fire on that date while docked at Toronto, Ontario, Canada. Affiant's son was also a passenger and came to her stateroom and aroused her, he having heard people getting up and noting some confusion. Affiant hurriedly dressed and went to the gangplank which was near her stateroom where a ship's mate told her and

her son to go ashore which they did. Affiant, at that time, did not know the ship was on fire. Affiant says that neither she nor her son were injured and she did not regard the occurrence on the "Noronic" as being an accident as far as she was concerned. Her baggage was destroyed and subsequently she received a form letter from the Canada Steamship Line Ltd., the owners of the "Noronic" requesting her to file a claim of loss with one Ralph Vince, Williamson Bldg., Cleveland, Ohio. Affiant stated that she did not consider the matter of sufficient importance to consult a lawyer. At that time she was residing temporarily with her son in Arlington, Virginia, and she simply went before a Notary Public on Mar. 4, 1950, one Margaret D. Pute, who prepared the affidavit showing her claim of loss for baggage destroyed by fire in the amount of $354.55; she then mailed the affidavit from Arlington, Va., to Ralph Vince in Cleveland, Ohio, and did not know that her affidavit was filed by Ralph Vince in the U. S. District Court at Cleveland and did not consider the filing of her affidavit as constituting any kind of litigation in court or that she was a party to any suit or litigation. She further alleged that she has not brought any suit against any one or has any one sued her in any form. She states further in her affidavit that while she was a juror in the instant case, she did not feel that any question directed either to the jury generally or to her required her to mention the "Noronic" incident; that she did not intend to conceal the fact that she was a passenger on the "Noronic" and would have been perfectly willing to mention that fact if any of the questions had required it. She concluded her affidavit by saying that the "Noronic" incident did not affect or influence her judgment in any respect whatever in rendering the verdict in the case at bar.

The trial court in this case overruled the motion of defendant for new trial on the ground of misconduct of a juror. We are of the opinion that the principles enunciated by the Supreme Court in the case of **Pearson v. Gardner Cartage Inc., 148 Oh St 425**, have application here. Under the holding in that case, where a prospective juror on voir dire examination in a personal injury case remains silent on the subject of accident or claim, whether a party is prejudiced by the fact that such juror sat in the trial without disclosure, is a question to be determined according to the sound discretion of the trial court. Whether a trial court has abused its discretion is to be determined by a reviewing court in accordance with the terms of §11364 GC. We are of the opinion that the claimed error did not affect the substantial rights of defendant and that the trial court was not guilty of an

abuse of discretion in overruling the motion for new trial. Conceding that the "Noronic" fire was a terrible disaster, we think that the insignificant claim for loss of baggage was not such as to affect the judgment of the juror in this case.

Coming now to consider the errors assigned in respect to the instructions of the court both before and after argument, defendant complains of three special requests to charge before argument and certain parts of the general charge. The substance of the instructions given before argument briefly summarized, is to the effect (1) that if domestic animals injure any person or property while wrongfully in a place where the injury is done, the owner may be liable without notice that the animal was accustomed to do mischief, and (2) that defendant, Burton, knowing that his three horses had strayed from their enclosure through the open gates, was obliged to take reasonable steps to pursue them or to capture them, or prevent them from straying onto the public highway; (3) that defendant, Burton, as the owner of the horse which struck the Sutfin automobile, is responsible for negligence in its keeping whereby damage is proximately occasioned.

That part of the general charge in respect to which error is claimed, is as follows:

"As has been said to you briefly in the special requests the owner of livestock is chargeable with knowledge of the propensities of that livestock. Any person who owns an animal is chargeable with knowledge of what that animal is likely to do.

"In this case, this defendant, Mr. Burton, might be, if you find that to be the fact, chargeable with knowledge that' many animals, including horses, take fright at the glare of lights that are carried by automobiles when driven in the night season, and may be chargeable with knowledge that when horses which are loose are thus frightened, they are as apt, by reason of their fright, to run directly into the front of the automobile or immediately across in front of it, as they are to make any other kind of move."

We have examined these instructions and have compared them with the case of **Drew v. Gross, 112 Oh St 485** (decided Apr. 28, 1925) from which the instructions were taken. In our opinion, the instant case is a stronger case on the facts than Drew v. Gross, but the same principles of law apply. In that case, the supreme court held, in an opinion by Allen J., concurred in by a unanimous court, that the owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned to another in his person or property. The supreme court also held that it is a question

of fact for the jury, whether an owner of horses who turned them loose, unattended, in a field adjacent to a much travelled highway, in the night time, the fence of which field was in such defective condition that the horses might easily stray out onto the highway, could have anticipated that one of the horses would stray onto the highway and collide with an automobile thereon.

In the case of **Plugfelder v. Convent of Good Shepard, 55 Oh Ap 158** (1936, 6th Dist. Ct. of Appeals, Lucas Co.), the syllabus provides:

1. "The owner of a bull which has found its way out of a defective enclosure and has gone onto a highway where it is struck by a motor vehicle, resulting in injury to the driver thereof, may be held liable in an action in tort regardless of whether or not the animal had vicious propensities, or the owner's knowledge thereof. The negligence of the owner in such case is a jury question.

2. "Where a bull suddenly leaps out of a ditch onto a public highway and is struck by a heavy motor truck, the assured clear distance statute is not applicable as a rule of negligence per se, but the issue of contributory negligence of the motor truck becomes a question of due care."

In the instant case, we do not have the fact of a defective fence, but rather the positive act of the owner in opening the gates to a pasture where the horses were kept, permitting them to escape to a place where they could and did stray onto the public highway. In the instant case also, there is the additional fact of the immediate knowledge of the escape of the animals, and knowledge of their propensities. In addition, defendant was familiar with the terrain and knew the paths leading to the open highway. Also, there were means at hand, if not to recapture, at least to prevent the animals from straying onto the highway. Under these circumstances, it became a question of fact for the jury to determine, whether defendant could, or could not, reasonably have anticipated the occurrence which resulted in the accidental injury and ensuing death of plaintiff's decedent. In other words, the principal test is one of reasonable foreseeability, under all of the facts and circumstances, and this is for the determination of the jury under proper instructions by the trial court. The law on this subject is so well stated, and is so pertinent, that we deem it well to quote in part from Drew v. Gross, supra, commencing at page 489, as follows:

"But this is not an action based upon the fence law, but an action in tort, arising, as claimed, out of the negligence of the owner of live stock in permitting the same to run loose and unattended, in the night time in a field, practically un-

enclosed, abutting upon a public highway. * * * **There is no question but that it would have been evidence of negligence to show that the owner had turned his horses directly onto a much travelled highway, unattended, in the night season.** Ruling Case Law Vol. 1, pg. 1094; Ingham on Animals, p. 338.

"The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned. **The principal test as to whether the owner is or is not negligent, is whether he could or could not reasonably have anticipated the occurrence which resulted in the injury. It is a question of fact for the jury whether an owner of horses who turns them loose unattended into a field adjacent to a much traveled highway in the nightime, the fence of which field is in such defective condition that the horses may easily stray out onto the highway, could have anticipated that one of the horses would stray out onto the highway and collide with an automobile thereon.**

"The owner of livestock is chargeable with knowledge of the propensities of his livestock, and is bound to know that horses or cattle when placed in an inclosure where the fence is so defective that they may easily pass out of the inclosure and onto the adjacent property will probably do so.

"It is common knowledge that many animals, including horses, easily take fright at the glare of the lights that are carried by automobiles, when driven in the night season, and it is also common knowledge that when horses which are loose are thus frightened they are as apt, by reason of their fright, to run directly into the front of the automobile, or immediately across in front of it, as they are to make any other kind of movement.

"If it be a negligent act to turn horses, in the night time, loose and unattended out onto a highway much used for travel by motor vehicles that may be lawfully driven thereon at a speed two or three times greater than horse-drawn vehicles, which travel the same highway, then it is some evidence of negligence to turn horses into a field adjacent to the highway in the night time, if the fence be in such defective condition that the animals may easily stray out onto the highway. If domestic animals injure any person or property while wrongfully in the place where the injury was done, the owner is liable, without notice that the animal was accustomed to do wrong or mischief. Thus, a person who allows his horses to be at large upon a city sidewalk is liable for damages occasioned by them, if he could reasonably have foreseen that they would cause such damage. Gary, a minor, v. Arnold, Admrs. 175 I. App. 365; Hardiman v.

Wholley, 172 Mass. 411, 52 N. E. 518, 70 Am. St. Rep. 292; Healey v. Ballantine, 66 N. J. L. 339, 49 A. 511." (Emphasis ours.)

While authority in other jurisdictions is not necessary to support the decision of Drew v. Gross, supra, it is very interesting and persuasive to note that the rule laid down in Drew v. Gross is in complete harmony with decisions of other states, particularly in the Northern section of the United States. The Supreme Court of Pennsylvania, in a unanimous decision under date of Mar. 23, 1942, in the case of Bender v. Welsh, 344 Pa. 392, 25 At. Rep. (2d) 182, after first calling attention to the common law rule to the effect that an owner of domestic animals was under no legal obligation to restrain them from going upon the highway unattended, unless he had knowledge of their vicious propensities, went on to say:

"The reason for the rule was that at the time of its origin, there was little likelihood of danger from stray domestic animals on the highway. The widespread use of the motor vehicle has changed the situation, however, and the rule adapted to present-day conditions is that stated in the Restatement of Torts, Sec. 518-(1): * * *

'one who possesses or harbors a domestic animal which he does not have reason to know to be abnormally dangerous, but which is likely to do harm unless controlled, is subject to liability for harm done by such animal, but only if (a) he fails to exercise reasonable care to confine or otherwise control it, and (b), the harm is of a sort which it is normal for animals of its class to do.'

In determining whether the instant case comes within the rule of the Restatement, we can safely say without discussion that the second requisite has been satisfied; **an unattended horse on the highway at night is in obvious danger of becoming involved in a collision with an automobile which is being carefully driven.** The point of contention is in the first requisite. The question is whether plaintiffs have presented sufficient evidence to justify the jury in finding that defendants were negligent, the burden of proof being on plaintiffs.

Negligence is not to be presumed by the mere happening of an accident. Rennie v. Schepps, 297 Pa. 39, 41, 146 A. 261. But if the thing which causes the injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of events would not happen if defendant who has the management, uses proper care, the burden is then placed on defendant, not to explain the accident, but to show that he used due care. Maltz v. Carter, 311 Pa. 550, 166 A. 852; Knox v. Simmerman, 301 Pa. 1, 151 A.

678; Folk v. Schaeffer, 186 Pa. 253, 40 A. 401; Devereaux v. Caldin, 127 Pa. Super. 595, 193 A. 372; Young v. Yellow Cab Co., 118 Pa. Super. 495, 180 A. 63; Hammil v. Phila. Rapid Trans. Co., 98 Pa. Super. 242; Latella v. Breyer Ice Cream Co. 87 Pa. Super. 325; Helfrich v. Gurnari, 78 Pa. Super. 449. If he does not show this to the jury's satisfaction, it may infer that he was negligent. Thus, in Folk v. Schaeffer, supra, where plaintiff was injured through the slipping of a knot tied by defendant, it was held that the bare fact that the knot slipped permitted the jury to infer want of care by defendant in making it, because ordinarily a knot properly made does not slip. Likewise, horses which are properly confined ordinarily do not escape. Hence, the presence of an unattended horse on the highway is sufficient evidence to allow the jury to infer negligence· on the part of those whose duty it was to restrain him, and this has been held in a number of cases including Tassoni v. LeBoutillier, 130 Pa. Super. 303, 196 A. 534; Felsch v. Schlue, 194 Iowa 1220, 191 N. W. 63; Dickson v. McCoy, 39 N. Y. 400, Doherty v. Sweetzer 82 Hun. 556, 31 N. Y. S. 649; Kenney v. Antonetti, 211 Cal. 336, 295 P. 341 and Anderson v. I. M. Jameson Corp. 7 Cal (2d) 60, 59 Pa. (2) 962. The reason justifying the rule is aptly stated in Kenney v. Antonetti, supra 211 Cal. at p. 340, 295 P. at p. 342.

" 'Under any but exceptional circumstances, the exercise of ordinary care will serve to keep unattended animals in their proper inclosures. In these days of rapid automobile transportation, the extreme hazard to drivers and passengers, of animals straying unattended on the roads at night cannot be over-estimated. The driver is placed in a well-nigh helpless position because of the tendency of an animal to spring out of the darkness in front of a car when blinded or hypnotized by its headlights. Against this contingency, drivers should be protected by having our roads clear of such obstructions, and every owner of livestock should make an earnest effort to so control their movements with due care that the lives of others may not be thereby endangered.' " (Emphasis ours.)

In the case of Smith v. Whitlock, 19 S. E. (2d) 617, (W. Va. Sup. Ct. of App. 1942) the court in the 2nd paragraph of the headnotes said:

"Independent of any statute, the owner of a horse negligently permitted to run at large on a public highway, is liable for injury done by such horse to a traveler thereon, if, from the character of the highway, the volume and speed of traffic thereon, the time of day, or other attendant circumstances, the owner should reasonably have anticipated

that injury to persons on the highway would result from the presence of the horse thereon."

See also: Note following above case in 140 A. L. R. 742, under heading "Liability for damages to vehicle or injury to person riding therein by animal at large on street or highway," which note refers to both the Calif. and Penna. cases, supra, at page 751.

Referring now to that part of the general charge in respect to which error is claimed by defendant, where the court charged in effect that defendant, Burton, might be, if they (the jury) find that to be a fact, chargeable with knowledge that many animals, including horses, take fright at the glare of headlights carried by automobiles when driven at night, and may be chargeable with knowledge that when horses are thus frightened they are as apt, by reason of their fright, to run directly in front of an automobile as they are to make any other kind of move. We think the claimed error in this respect cannot be sustained.

While there was no specific charge of negligence contained in the petition, to this effect, nevertheless it was an issue developed by the evidence, on which the court could properly charge. The instructions as given follow the dictum in Drew v. Gross, supra, almost verbatim as found at page 490, hereinbefore quoted.

We conclude, therefore, that the special charges as given before argument, and the general charge taken in its entirety, are in harmony with the law on the subject and applicable to the facts of the case.

We conclude that there was no prejudicial error affecting substantial rights of defendant in respect to the charges given before and after argument, and for this reason the errors assigned on this ground will be overruled.

Finally, we come to consider the error assigned that the verdict is grossly excessive, appearing to have been rendered under the influence of passion and prejudice.

We have given considerable attention to this issue raised on this appeal. **Sec. 10509-167 GC** provides in part that:

"A jury may give such damages as it may think in proportion to the pecuniary injury resulting from such death for the persons respectively for whose benefit the action was brought."

The general rule in respect to the measure of damages recoverable for wrongful death, may be gleaned from American Jurisprudence on the subject "Death," Sec. 190 to 242, the gist of which is that in determining an amount of damages recoverable for wrongful death, it is proper to take into consideration such factors varying in individual cases,

as the victim's life expectancy, character, health, habits, talents, prospects, prior earnings, probable future earnings, needs of and contributions to defendant and current returns on investments.

It is clearly within the province of the jury to determine the amount of damages to be allowed in any particular action for wrongful death. In the recent case of Detoskey, Admrx. v. Ruan Transp. Corp. decided by the Supreme Court of Iowa, Dec. 13, 1949, appearing in 17 A. L. R. (2d) 826 at page 830, 40 N. E. (2) 4 it was held that in determining the possible value of a decedent's estate, if he had lived out his expectancy the jury can and should consider the reduced purchasing power of a dollar as it is affected by changing economic conditions and the possible return on prime investments. Citing Dedman v. McKinley, 238 Iowa, 886, 892, 29 N. W. (2d) 337.

Concerning the purchasing power of the dollar, the court further states at page 830, as follows:

"A recent apparently authoritative source states that the relative purchasing power of a consumer's dollar based on a $1 unit in 1914, has changed as follows: 1920-$.50; 1926-$.57; 1933-$.78; 1939-$.72; and in 1949-$.43. If these figures are approximately correct it merely goes to show the futility of endeavoring to determine the excessiveness of a verdict from a mathematical or comparative basis."

The evidence in the instant case shows that decedent wife of plaintiff administrator, acted in a dual capacity in that she performed the usual domestic services for her husband, and gave assistance to her husband in his business. The husband and one son are engaged in the plumbing business. There is evidence in the record showing that the decedent helped in her husband's business in that she answered the telephone and routed the men on the jobs; she kept the books; she took care of invoices for supplies and materials and checked them; she assisted her husband in making out invoices for jobs done and after he had priced them she made out the invoices and sent them out and in general assisted in the business other than the actual doing of plumbing work. She was 55 years of age and at the time of her death, under standard mortality tables, would have a life expectancy of about seventeen years.

We are of the opinion that under all the facts and circumstances developed in the evidence, the plaintiff is entitled to substantial damages. However, the members of this court are of the opinion that the verdict of the jury is excessive, but not induced by passion and prejudice. It might be that such verdict came about by virtue of lack of clarity of the court's charge on the subject of earnings.

Therefore, a remittitur will be granted in the sum of Ten Thousand Dollars ($10,000.00) thus reducing the judgment to Twenty-Five Thousand, Five Hundred Dollars ($25,500.00). If the remittitur is accepted by plaintiff within ten (10) days from date of this judgment entry, the judgment of the common pleas court will be affirmed; otherwise, the judgment will be reversed for the reason that the damages awarded are excessive and the cause will be remanded for further proceedings according to law. Exc. Order see journal.

SKEEL, PJ, THOMPSON, J, concur.