[Cite as *Yoe v. Ohio Dept. of Agriculture*, 2010-Ohio-2178.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AUDRA YOE, Admr., et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF AGRICULTURE

    Defendant
    Case No. 2005-09006

Judge Joseph T. Clark

DECISION

{¶ 1}  Plaintiffs William and Audra Yoe, Administrators of the Estate of Greyson Yoe, brought this action asserting wrongful death and survivorship claims on behalf of the heirs and next of kin of decedent Greyson Yoe.  A trial was held on the issue of liability and judgment was granted in favor of plaintiffs.  The case is now before the court for determination following a trial on the issue of damages.

{¶ 2}  Greyson Yoe was injured on August 13, 2003, when several thousand volts of electricity coursed through him when he made contact with the metal railing of an  amusement ride that was not properly grounded.  Greyson immediately collapsed, suffered cardiac arrest, and was resuscitated for approximately 25 minutes before his heart rhythm was reestablished.  He was transported to a local hospital and then air-lifted to Metro Hospital in Cleveland where he was noted to be unconscious.  While at Metro, Greyson had minimal brain wave activity and was determined to have suffered irreversible brain damage due to the prolonged period of oxygen deprivation.  Subsequently, Greyson was transferred to a hospice unit where he died on September 2, 2003.

**{¶ 3}** It is undisputed that the amusement ride owner had firsthand knowledge of the deplorable condition of the ride, including broken gauges, inoperable bumper cars, faulty lighting, and missing insulation on various parts of the power cable. Moreover, the owner knew that a bare wire had been pulled loose and left exposed during prior disassembly of a light panel canopy attached to the ride. The owner's failure to repair the loose wire that came in contact with the metal structure of the ride was a proximate cause of the harm to Greyson. In addition, the electrician's failure to properly connect the ride to its power source was also a proximate cause of Greyson's injury.[1] In the liability decision, the court determined that defendant's employees were negligent in that they failed to discover during their inspection that the ride was not properly grounded, and that such negligence was a proximate cause of the accident.

**{¶ 4}** Greyson was eight years old at the time of the accident. Greyson is survived by his parents, William and Audra Yoe; his older brother, Paul; his paternal grandparents; and his maternal grandfather; as well as his aunts and cousins. Although he resided with his mother in a home near the Yoe family nursery business, he spent equal amounts of time at the nursery acreage where both his father's and his paternal grandparents' residences are located. At trial, plaintiffs presented their own testimony and that of a variety of lay witnesses, to include Greyson's brother, paternal grandparents, and his paternal aunt, as well as a close family friend. In addition, plaintiffs presented expert medical testimony from a pediatric neurologist, Shlomo Shinnar, M.D., who opined as to the extent of pain and suffering Greyson may have endured from the moment of the accident to the time of his death. Defendant also presented expert medical testimony on the same issue.

**{¶ 5}** In the survival action, plaintiffs are seeking compensation for Greyson's conscious pain and suffering prior to his death. Plaintiffs' expert testified via videotaped

---

[1]Plaintiffs received $1,950,000 in settlement proceeds from the owner of the amusement park ride and from the county fair board.

deposition that Greyson would have experienced pain from the initial electrical shock before he was rendered unconscious. In addition, based upon his interpretation of serial electroencephalogram (EEG) tracings recorded from August 14 to August 15, 2003, Dr. Shinnar opined that there was a period of time at Metro when Greyson was capable of perceiving pain. Dr. Shinnar stated that Greyson's brain waves appeared to show that he was responding to stimuli for a few hours but that the brain activity then deteriorated to the point that Greyson had no conscious perception of pain or discomfort. Conversely, defendant's expert neurologist, Dr. Robert Taylor, M.D., opined that due to the extreme oxygen deprivation from the prolonged period of resuscitation, Greyson never regained the level of cognitive brain function necessary to perceive painful stimuli or discomfort. Upon review of the experts' testimony and evidence contained in the medical records compiled by the treating physicians at Metro, the court does not find Dr. Shinnar's testimony interpreting Greyson's level of brain function to be persuasive.[2]

{¶ 6} According to Dr. Taylor, Greyson suffered near instantaneous cardiac arrest at the fairgrounds and the resultant loss of oxygen to his vital organs for a prolonged period of time caused permanent and irreversible brain damage. Dr. Taylor stated that the electrical surge most likely entered one of Greyson's forearms, traveled across his chest through his heart, and exited the other forearm. As such, Dr. Taylor opined that the electrical surge occurred simultaneously with the interruption to Greyson's heart rhythm such that Greyson would have remained conscious only for a very brief period of time.

{¶ 7} Dr. Taylor explained that for a person to experience pain, the brain must have time to recognize and identify the signals of pain being sent from the body. In essence, perception of pain is dependant upon both the duration and the severity of the

---

[2]The court shall admit Exhibits E and F attached to Dr. Shinnar's deposition testimony; however, the court accorded little weight to this portion of the testimony.

stimulus.  In Dr. Taylor's opinion, Greyson fell unconscious immediately after the shock, and he never regained a level of consciousness necessary to be able to perceive or to react to pain throughout the period of time from when his heart rhythm initially ceased until the time of his death.  Although Greyson exhibited posturing behaviors in response to stimuli, Dr. Taylor asserted that these distinctive arm movements signaled that Greyson's response emanated from the brain stem and that he was in a very deep coma.

{¶ 8}  After review of the expert testimony presented by the parties, the court finds that Dr. Taylor's testimony was more persuasive overall than that offered by Dr. Shinnar. Specifically, the medical records support Dr. Taylor's opinion inasmuch as they described entrance and exit wounds that appeared on the surface of Greyson's forearms.  Thus, it seems more probable that the electrical shock traveled the path described by Dr. Taylor, directly through Greyson's heart, and rendered him unconscious nearly immediately.  Taking into consideration the severity of the damage to his brain, the court is not convinced that Greyson was able to perceive pain or discomfort after he became unconscious at the fairgrounds.  Based upon the totality of the evidence presented, $10,000 shall be awarded for Greyson's conscious pain and suffering.

{¶ 9}  Pursuant to R.C. 2125.02 (A)(2), the court "may award the reasonable funeral and burial expenses incurred as a result of the wrongful death."  Upon review of the evidence and testimony presented, the court makes the following determination. Initially, the court finds that the cost of stationery included in plaintiffs' calculation of funeral and burial expenses is a reasonable, compensable expense.  Therefore, the court finds that plaintiffs incurred funeral and burial expense for Greyson in the amount of $13,434.60, which shall be awarded.[3]

---

[3]The court hereby OVERRULES defendant's objection and Plaintiffs' Exhibit V is ADMITTED.

{¶ 10} As for the cost of medical bills incurred for Greyson's hospitalization and medical care, the court makes the following determination.  Plaintiffs submitted evidence that Greyson's medical bills totalled $89,247.08, of which $45,011.56 was paid by plaintiffs' health insurance carrier, Qualchoice.  Pursuant to R.C. 2743.02(D), "[r]ecoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant."  Plaintiffs reimbursed Qualchoice from settlement proceeds and defendant asserts that the amount of medical expenses actually paid by plaintiffs was not established at trial.  The court agrees.  The court finds that William Yoe, Jr.'s testimony on this issue consisted of imprecise and vague references to amounts billed, reimbursed, and paid.  As such, the court finds that the testimony and evidence did not establish the exact medical expense amounts paid by plaintiffs or the amounts, if any, not reimbursed by a collateral source that remain due and owing.  Accordingly, no award for medical expense can be calculated reliably by the court.

{¶ 11} Turning to the damages associated with the wrongful death claim, R.C. 2125.02(B) provides that "[c]ompensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:

{¶ 12} "(1)                    Loss of support from the reasonably expected earning capacity of the decedent;

{¶ 13} "(2)                    Loss of services of the decedent;

{¶ 14} "(3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

{¶ 15} "(4)                    Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;

**{¶ 16}** "(5)                                    The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent."

**{¶ 17}** The court notes that Greyson was still in grade school at the time of the accident, and as there is no evidence that Greyson was supporting his family at the time of his death, no loss was incurred in that regard.  Several witnesses testified that Greyson was exposed to nearly every aspect of the family business and that he enjoyed learning about the various tasks integral to the propagation of plants for sale.  Based upon the totality of the evidence presented, and taking into consideration Greyson's age and education level, no monetary sum shall be awarded for loss of services.

**{¶ 18}** As to the loss of future support, the parties' primary dispute centers upon whether the court can determine such value, especially with reference to the future employment or career path Greyson might have pursued and the economic probability of what would flow therefrom to Greyson's beneficiaries.  Neither party presented testimony from economics experts on these issues.

**{¶ 19}** Pursuant to R.C. 2125.02(A)(3)(b)(i), the "court may consider all factors existing at the time of the decedent's death that are relevant to a determination of the damages suffered by reason of the wrongful death."  For example, "it is proper to take into consideration such factors, varying in individual cases, as the victim's life expectancy, character, health, habits, talents, prospects, prior earnings, probable future earnings, needs of and contributions to [his beneficiaries] and current returns on investments."  *Sutfin v. Burton* (1951), 91 Ohio App. 177, 193, citing 16 American Jurisprudence, 127, 160, "Death," Sections 190 to 242.

**{¶ 20}** According to the testimony presented, Greyson had formed a very special bond with his family.  His parents testified that Greyson was an extraordinary child who was beloved by his family and his extended family, all of whom resided and worked together in close proximity. Plaintiffs assert that Greyson would have continued his interest in the family nursery business and that he would have been an integral part of

the business as an adult.  Conversely, defendant maintains that such projections are purely speculative when taking into consideration that Greyson died at such a young age and that he had not yet completed elementary school.  Defendant contends that it is just as likely Greyson would have completed higher education and pursued another career.

{¶ 21} Despite the impassioned testimony presented by Greyson's family, the court is not persuaded that Greyson would have chosen to be employed in the family business as an adult either upon graduation from high school or college, and that the hypothesis that such would have occurred is not substantial enough to support the calculation of future lost income.  With respect to loss of support/loss of prospective inheritance, absent evidence of an established earning history or career path, plaintiffs cannot meet their burden of proof on this issue.

{¶ 22} The two remaining elements of damages are non-economic losses:  loss of society and mental anguish.  Pursuant to R.C. 2125.02 (A)(2), the court "may award damages authorized by division (B) of this section, as it determines are proportioned to the injury and loss resulting to the beneficiaries described in division (A)(1) of this section by reason of the wrongful death."  R.C. 2125.01(A)(1) states that "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."  Based upon the specific facts of this case, especially considering Greyson's close relationship with his family, the court awards non-economic damages in the amount of $1,000,000.  In summary, $1,023,459.60 shall be awarded in damages, which includes the $25 filing fee.

{¶ 23} At the trial, plaintiffs also presented testimony from Greyson's paternal aunt, his paternal grandparents, and his older brother.  In addition, Audra Yoe testified

as to the relationship Greyson had with his maternal grandfather and aunt. Nonetheless, the court finds that pursuant to statute, "[a]n equitable distribution of damages to the beneficiaries according to their respective injury or loss is the sole issue that confronts the probate court. R.C. 2125.03(A)(1)." *In re McMullen Estate*, Lawrence App. No. 01CA26, 2002-Ohio-3672, ¶12.

{¶ 24} R.C. 2125.03(A)(1) states: "The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all of the beneficiaries are on an equal degree of consanguinity[4] to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. *If all of the beneficiaries are on an equal degree of consanguinity to the deceased person, the beneficiaries may adjust the share of each beneficiary among themselves.* If the beneficiaries do not adjust their shares among themselves, the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person." (Emphasis added.)

{¶ 25} Based upon the parties' December 14, 2009 stipulation, and the evidence submitted by plaintiffs, the court finds that the Lake County Probate Court has already made such apportionment. Indeed, the January 27, 2005 "amended entry approving settlement and distribution wrongful death and survival claims," issued by Lake County

---

[4]"Under civil law rules for the computation of degrees of kinship or consanguinity, parents and children are related in the first degree; grandparents, grandchildren, brothers and sisters are related in the second degree; and aunts, uncles, nieces and nephews are related in the third degree. Ohio Jurisprudence 3d, Decedent's Estates, Section 90-91." *In re Estate of Payne,* Franklin App. No. 04AP-1176, 2005-Ohio-2391, ¶9.

Probate Court Judge Klammer lists those persons who suffered damages by reason of the wrongful death of Greyson Yoe and their respective distributive share of the settlement proceeds. According to Plaintiffs' Exhibit Z, the settlement monies were allocated to the wrongful death and survival claims, and the proceeds were divided equally between Audra and William Yoe, Jr. Accordingly, the case need not be returned to the probate court and final judgment shall be entered.[5]

{¶ 26} According to the evidence presented at trial, plaintiffs received $1,950,000 in settlement proceeds from the owner of the amusement park ride and from the county fair board. As noted above, R.C. 2743.02(D) provides that "[r]ecoveries against the state shall be reduced *by the aggregate* of insurance proceeds, disability award, *or other collateral recovery* received by the claimant." (Emphasis added.) Applying the collateral source deduction per statute, the court finds that any damages suffered by plaintiffs have been offset by collateral recovery.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AUDRA YOE, Admr., et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF AGRICULTURE

    Defendant
    Case No. 2005-09006

Judge Joseph T. Clark

JUDGMENT ENTRY

---

[5]Given the fact that there are surviving grandparents and siblings, the court also finds that next of kin does not include aunts, uncles, or cousins. See *In re Estate of Payne*, supra, ¶11-14.

This case was tried to the court on the issue of plaintiffs' damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiffs, which includes funeral expense, survivorship damages, loss of society, and mental anguish, plus the $25 filing fee paid by plaintiffs. The award is offset by the collateral sources received, resulting in a net award of $0. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Daniel R. Haude
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115-1093

Paul R. Malchesky
Timothy P. Cannon
41 East Erie Street
Painesville, Ohio 44077-3747

William C. Becker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

SJM/cmd/Filed May 7, 2010/To S.C. reporter May 14, 2010